STATE v. R. S. HUNTER.

*Indictment—Escape—Evidence—Practice.*

1. When the original record is offered in evidence in the Court to which it belongs, it should be received. While in any other court, the proper mode of proving it, is by a duly authenticated copy, under the seal of the Court, yet the original, when present, is admissible, if competent.

2. While not entirely orderly to take a submission during a trial of another action, yet the Court may do so, taking care that no injustice or prejudice is caused thereby to the party on trial.

3. The Court is not required to give special instructions, unless there is evidence on which to base them.

4. The Court charged the jury that it was the duty of the officer to use all legal means to safely keep the prisoner; that failure to put hand-cuffs on him, was not *per se* negligence, but the jury must decide whether in this case the failure to do so contributed to his escape, and whether the defendant had used due diligence in guarding the prisoner without them; *Held* to be no error.

5. The Court further charged, that ordinarily, the burden of proof is on the State to the end of the case, but that in an indictment for an escape, this was changed, and when the escape was proved or admitted, the burden is shifted to the defendant, to prove that there was no negligence on his part, and that he had used all legal means for his safe keeping; *Held,* to be no error.

(*Ward* v. *Saunders*, 6 Ired., 382; *State* v. *Collins*, 3 Dev., 117; *State* v. *Voight*, 90 N. C., 741; *State* v. *Martin*, 70 N. C., 628; *State* v. *Pratt*, 88 N. C., 639, cited and approved).

INDICTMENT for an escape, tried before *Clark, Judge,* and a jury, at November Special Criminal Term, 1885, of the Superior Court of WAKE county.

It was admitted that the defendant was the deputy sheriff of Alamance county.   The State then offered in evidence the original bound volume of the records of Wayne Superior Court, produced in Court and proved by the Clerk of the Superior Court of Wayne county, for the purpose of showing that the escaped prisoner had been indicted in Wayne county for larceny, and also proved by the same officer, the original *capias* issued by the Clerk of said Court to the sheriff of Alamance county, with the original return thereon, signed "R. S. Hunter, deputy shff." This evidence being objected to, the objection was overruled and evidence admitted.

The State then offered the original bill of indictment, and the endorsement thereon, brought from the records of Wayne Superior Court.   To this defendant objected; objection overruled, and evidence admitted.

After all the evidence was in, and one counsel had addressed the jury, there being a pause for a few minutes, a member of the

bar, who appeared for one Evans, who was indicted in a separate bill for the same offence, rose and said, that he wished to enter a submission, without stating in what case.   Defendant's counsel objected.   The Court remarked that if he wished to enter a submission, he could do so while the Court was waiting.   The counsel then said he wished to submit for Henderson Evans; that he had examined the evidence; that Henderson was certainly guilty, but Hunter was more guilty than he.   The Court promptly interfered and stopped the counsel, and also told the jury to disregard and put out of their minds this statement; that it was not evidence, and they should not consider it, and that the Court would not have allowed the remark, if it could have prevented it.   The counsel for defendant excepted.

The State introduced Evans, who was indicted in another bill for the same escape, who testified that the defendant was deputy sheriff of Alamance county; that, being summoned by defendant, he aided him in the arrest of the prisoner upon papers from Wayne county; that prisoner offered to pay expenses of defendant and witness to Goldsboro, if defendant would take him direct, instead of carrying him to Alamance jail; and further testified among other things, that after they left Raleigh, prisoner said he wanted to see a friend in the second class car; that defendant told him that he might go; that prisoner went, under that permission, into said car, unaccompanied by any guard; that defendant did not go with prisoner, nor did he tell witness to go; that afterwards he, witness, went of his own accord, and prisoner was in the second class car, but defendant did not know that witness had gone into that car; that prisoner got up and started back, and must have stepped off the platform; that witness went back into the first class car, and found that prisoner was missing, and told the defendant, who was sitting in that car, with his head hung down, by the side of prisoner's wife; that defendant made no inquiries, and at Garner's station, they both took the back train to Raleigh; that before they reached Raleigh, going down, one Andrews told defendant that he knew prisoner, and that defendant had better hand-cuff him, but defendant refused to do so.

Captain Waitt, the conductor, testified that the prisoner paid for tickets for the whole party; that defendant and wife of prisoner were in the first class car; that he heard Evans tell defendant that the prisoner had got away; that defendant expressed no surprise, and took back train at Garner's station; that he saw Evans in the second class car, who told him that he had an eye on the prisoner, and as far as he knew, the defendant was sober, and that he had some conversation with him.

One Andrews testified, that he told the defendant that he had better handcuff the prisoner, but he did not do it; that the prisoner said he would pay the way of the guard, rather than be handcuffed.

There was other evidence to the same effect; also, that prisoner and defendant were drinking together before they reached Raleigh, and while at Raleigh; of conversations between Evans and defendant while at Raleigh on their return, and that defendant was drunk when he returned.

Defendant asked the Court to instruct the jury, that if they believed that the defendant let the prisoner go into the forward car to speak to his friend, and ordered Evans to go with him as a guard, and that Evans was a sufficient guard, then the defendant is not guilty. The Court refused to give this instruction, on the ground, that there was no evidence that the defendant had ordered Evans to follow the prisoner into the other car. Defendant excepted.

The defendant further asked the Court to instruct the jury, that it was not the duty of the defendant to put handcuffs on the prisoner. On this point the Court charged the jury, that under the statute, it was the duty of the defendant to use "all legal means to keep the prisoner, and carry him to Goldsboro; that the failure to place handcuffs on him was not '*per se.*' negligence; that the jury were to judge from the evidence, whether or not the failure to do so in this case contributed to the escape, and whether or not the defendant had used due diligence in guarding the prisoner without them. Defendant excepted.

The Court further charged, that ordinarily the burden of 'proof is on the State, to the end of the case, but in indictments for escape, and this was an indictment for negligent escape, when the escape was proved or admitted, the burden is shifted to the defendant, to prove there was no negligence on his part, and that he had used, in the language of the statute, "all legal means" for his safe keeping; to which defendant excepted.

The jury returned a verdict of guilty, and the Court pronounced judgment accordingly, from which defendant appealed to the Supreme Court.

*Attorney General,* for the State.
*Mr. John Devereux, Jr.,* for the defendant.

MERRIMON, J. Generally and regularly, the record itself of an action, ought not to be produced in evidence, except when it is offered in the same Court to which it belongs. That Court has the lawful possession and control of it, and can promptly give litigants such benefit of it as they may be entitled to have, without removing it from the immediate custody of the Court, and to a place more or less remote from the office where it is regularly kept. There is no reason, however, why the record should not itself be evidence, in a proper case, in any Court, and the best evidence. It is not generally so used, because it ought not to be removed from its proper depository, and from the Court to which it belongs. The law contemplates that it shall continuously remain there, under the keeping and strict care of the proper officer of the Court, to the end that it may be safely kept, and always be present there, to be seen and examined by those who may have the right to see and examine it. There are exceptional occasions on which it may be necessary to remove it for a short while to another Court, to be used as evidence, but such occasions are infrequent and extraordinary, and the power to remove it should be exercised sparingly and with care. But this by no means implies that the record is not evidence, whenever it is

present, in a proper case, in any Court.    Indeed, it is the best evidence of itself and what it contains.

Regularly, however, a duly authenticated copy of the record, under the seal of the Court, is the proper evidence of it and its contents.

On the argument, the defendant's counsel relied upon *Ward* v. *Saunders*, 6 Ired., 382, to support his objection to the record, itself offered is proper evidence.    In that case, Chief Justice RUFFIN said:  "When the proceedings are in one Court, and they are offered as evidence in another, regularly the original documents, which may need evidence to identify them, are not evidence, but only the record made up, or a copy from it, authenticated by the Court."    This is not inconsistent with what we have here said.    *Regularly* the law is as he thus states it, but he did not say, nor mean to say, as we understand him, that the record itself is not evidence when present. *State* v. *Collins*, 3 Dev., 117; *Ward* v. *Saunders, supra; State* v. *Voight*, 90 N. C., 741.    So, the first exception cannot be sustained.

For the like reason, the second exception can not be sustained.    The indictment was a part of the record—it was a formal presentation of the charge by the grand jury, and in contemplation of law, passed into, and became a part of the record, and the best evidence.    The Court so recognized and accepted it. The original indictment in writing, was part of the minutes and documents that made up the record when drawn out in form, and such minutes and documents are treated, ordinarily, as the record itself.

During a pause in the trial, the Court received the submission of a defendant other than the present defendant, in an indictment for the same escape, and this is made the ground of a third exception.

It was not very orderly perhaps, to receive the submission, pending the trial.    But there is no substantial legal reason why it might not be done.    We are unable to see how the mere fact of the submission could prejudice the defendant—it did not in

contemplation of law, and it does not appear that it did so in fact. The defendant simply had the exception entered, seemingly for what it might be worth, without assigning any special ground for it; he did not ask for a mistrial at the time, nor did he afterwards move for a new trial, upon that or any other ground.

In practice, it is not uncommon to receive submissions from defendants, or to allow them to plead guilty, at any time while the Court is in session, with a view to convenience, and to expedite the business of the Court. And not infrequently, a party on trial with another, for the gravest offence, is allowed to change his plea to guilty, or to consent to a verdict of guilty for some grade of the offence of which he is charged. The Court, however, should be careful, to see that such practice works no undue prejudice to another party on trial. *State* v. *Martin,* 70 N. C., 628; *State* v. *Pratt,* 88 N. C., 639.

. The Court properly declined to grant the first special instruction to the jury, asked for by the defendant, because, as the Court said, there was no evidence that warranted it. The mere fact that a witness testified that another witness said in his presence, that he had his eye on the prisoner who escaped, is too unimportant of itself and in the face of the other testimony, to make evidence to go to the jury, to establish a leading and important fact.

Nor was the defendant entitled to the second special instruction he asked the Court to give. Whether it was proper or not to put hand-cuffs on the prisoner whom he had in custody, depended upon his character and the attending circumstances. The instructions given by the Court in that respect, were unobjectionable.

Obviously, the sixth exception is without foundation. The Court substantially told the jury, that the burden of proof was upon the State, to show that the prisoner who escaped, was committed to the custody of the defendant, and escaped and then the burden of proof shifted to the defendant, and he must prove

that "such escape was not by his consent or negligence, but that he used all legal means to prevent the same, and acted with proper care and diligence." The charge was substantially in accordance with the statute. (The Code, §1022).

We find no error in the record, and the judgment must be affirmed. To that end, let this opinion be certified to the Superior Court according to law. It is so ordered.

No error.                        Affirmed.