## HUDSON *v.* NORTH CAROLINA.

No. 466. Argued May 16, 1960.—Decided June 20, 1960.

*William Joslin* argued the cause and filed a brief for petitioner.

*Ralph Moody,* Assistant Attorney General of North Carolina, argued the cause for respondent. With him on the brief was *T. W. Bruton,* Attorney General.

Mr. Justice Stewart delivered the opinion of the Court.

The petitioner and two others were brought to trial before a jury in the Superior Court of Cumberland County, North Carolina, upon an indictment jointly charging them with robbery. When their case was called

one of the defendants, David Cain, was represented by a
lawyer of his own selection. The petitioner and the other
defendant did not have counsel. Before pleading to the
indictment, the petitioner, who was eighteen years old,
asked the presiding judge to appoint a lawyer to help him
with his defense, stating that he was without funds to
employ counsel and was incapable of defending himself.[1]
The prosecutor conceded that the petitioner was unable to
employ an attorney.[2] The trial judge denied the motion,
telling the petitioner that "The Court will try to see that
your rights are protected throughout the case."

All three of the defendants thereupon pleaded not
guilty, and the case proceeded immediately to trial. The
first witness for the State was the alleged victim of
the robbery. Midway through this witness's testimony
Cain's lawyer offered to represent all three codefendants
"as long as their interests don't conflict." At the con-
clusion of the witness's direct testimony the trial judge
advised the lawyer that he should cross-examine only on
behalf of Cain, because "I think you probably have a con-
flicting interest there." Thereafter the witness was cross-
examined intensely by Cain's lawyer, who brought out
the witness's criminal record and previous commitment to
a state mental institution. The petitioner and the other
codefendant also briefly cross-examined the witness. The
only other witnesses for the prosecution were two deputy
sheriffs, who testified as to statements made to them by
the defendants. They were cross-examined by the law-
yer, but not by the two defendants without counsel.

At the conclusion of the State's evidence, Cain's lawyer
moved that the case be dismissed. When this motion was

---

[1] "I don't have funds to employ an attorney and am not capable
of defending myself. If the Court please, I would like to ask the
Court to employ me an attorney."

[2] "I will say that he is not able to employ an attorney, but as to
whether he is able to represent himself I cannot say."

denied he stated that Cain had no evidence to offer. Thereupon, in the presence of the jury, he tendered on behalf of Cain a plea of guilty to petit larceny. This plea was agreed to by the prosecutor and accepted by the court. The lawyer then withdrew from the proceedings.

The trial proceeded. The petitioner and his remaining codefendant each took the stand. Each made a statement denying the robbery. The petitioner was cross-examined at some length, with emphasis upon his previous criminal record. Neither the petitioner nor his codefendant produced any other witnesses or offered any further evidence. They were given an opportunity to argue their case to the jury, but did not do so.

The jury found both defendants guilty of larceny from the person, a felony under North Carolina law, and the following day the trial judge pronounced sentence. The petitioner was committed to the penitentiary for a term of three to five years. The codefendant convicted with him was sentenced to a jail term of eighteen months to two years. Cain was given a six months' suspended sentence.

The petitioner's subsequent appeal to the Supreme Court of North Carolina was dismissed for want of prosecution. Thereafter he filed in the trial court a "petition for writ of certiorari," which urged that the failure of the trial court to provide him with counsel had deprived him of his constitutional rights. This petition was treated as an application for relief under the North Carolina Post-Conviction Hearing Act.[3] In the subsequent proceedings the court appointed a lawyer to represent the petitioner,[4] and held a hearing at which the petitioner

---

[3] N. C. Gen. Stat., § 15–217 *et seq.*

[4] The North Carolina Post-Conviction Hearing Act provides: "If the petition alleges that the petitioner is without funds to pay the costs of the proceeding, and is unable to give a costs bond with sureties for the payment of the costs for the proceeding and is unable to

and his counsel were present. After considering the evidence presented, including a transcript of the trial proceedings,[5] the court concluded that no special circumstances were shown which required the appointment of trial counsel, that the petitioner had been convicted only after a fair and impartial trial, and that there had consequently been no denial of due process of law. The petition was accordingly dismissed.[6] The Supreme Court of North Carolina declined to review the order of dismissal. We granted certiorari to consider the substantial constitutional claim asserted. 361 U. S. 812.

The judge who presided at the post-conviction proceedings made detailed findings of fact. He found that the trial judge had "advised the petitioner of his right to challenge when the jury was selected and advised the petitioner of his right to cross examine witnesses and to

furnish security for costs by means of a mortgage or lien upon property to secure the costs, the court may order that the petitioner be permitted to proceed to prosecute such proceeding without providing for the payment of costs. If the petitioner is without counsel and alleges in the petition that he is without means of any nature sufficient to procure counsel, he shall state whether or not he wishes counsel to be appointed to represent him. If appointment of counsel is so requested, the court shall appoint counsel if satisfied that the petitioner has no means sufficient to procure counsel. The court shall fix the compensation to be paid such counsel which, when so determined, shall be paid by the county in which the conviction occurred." N. C. Gen. Stat., § 15–219.

[5] The judge who conducted the post-conviction proceedings was not the judge who had presided at the trial.

[6] The dismissal was clearly based upon the court's view of the merits of the petitioner's constitutional claim. The court nowhere suggested that the petitioner had chosen an inappropriate remedy under the State law. Indeed the Supreme Court of North Carolina has made clear that claims of unconstitutional denial of the right to counsel are to be considered on their merits in Post-Conviction Hearing Act proceedings. State v. Hackney, 240 N. C. 230, 81 S. E. 2d 778; State v. Cruse, 238 N. C. 53, 76 S. E. 2d 320.

argue the case to the jury." He also found that "during the trial the Court properly excluded evidence which was inadmissible, and the petitioner cross examined the witnesses against him and at his request testified in his own behalf."

In this Court counsel for the petitioner does not take issue with these findings. Counsel's primary emphasis rather is upon the petitioner's comparative youth, relying upon *Wade* v. *Mayo,* 334 U. S. 672. In that case it was held that the denial of a lawyer's help had resulted in the deprivation of due process where the Federal District Court after a habeas corpus hearing had found that the eighteen-year-old defendant was "an inexperienced youth unfamiliar with Court procedure, and not capable of adequately representing himself." 334 U. S., at 683. Here, by contrast, the post-conviction court found that "although the petitioner was only eighteen years of age and had been only to the sixth grade in school at the time of his trial, he is intelligent, well informed, and was familiar with and experiencèd in Court procedure and criminal trials . . . ." Evaluations of this nature are peculiarly within the province of the trier of the facts based upon personal observation. As the Court pointed out in *Wade* v. *Mayo,* "[t]here are some individuals who, by reason of age, ignorance or mental capacity, are incapable of representing themselves adequately in a prosecution of a relatively simple nature. This incapacity is purely personal and can be determined only by an examination and observation of the individual." 334 U. S., at 684.

In view of the findings of the post-conviction court, supported by the record of the trial proceedings, this, in short, is not a case where it can be said that the failure to appoint counsel for the defendant resulted in a constitutionally unfair trial either because of deliberate overreaching by court or prosecutor or simply because of

the defendant's chronological age. Moreover, the record shows that up to the time that Cain's lawyer withdrew from the proceedings the petitioner was receiving the effective benefit of the lawyer's activity, and had the trial of all three defendants proceeded to a jury verdict, it is possible that the lawyer could have continued to represent the interests of the petitioner as well as those of the client who had retained him.

But that did not happen. Instead, on the advice of his counsel Cain entered a plea of guilt in the presence of the jury midway through the trial. The potential prejudice of such an occurrence is obvious and has long been recognized by the courts of North Carolina. *State v. Hunter,* 94 N. C.. 829, 835; *State v. Bryant,* 236 N. C. 745, 747, 73 S. E. 2d 791, 792; *State v. Kerley,* 246 N. C. 157, 97 S. E. 2d 876. Yet it was precisely at this moment of great potential prejudice that the petitioner and his codefendant were left entirely to their own devices, for it was then that Cain's lawyer withdrew from the case. At that very point the petitioner and his codefendant were left to go it alone.

The precise course to be followed by a North Carolina trial court in order to cure the prejudice that may result from a codefendant's guilty plea does not appear to have been made entirely clear by the North Carolina decisions. In the *Hunter* case the Supreme Court of North Carolina pointed out that while not infrequently a defendant on trial with another is allowed to enter a plea of guilt during the course of the trial, the court should exercise care "to see that such practice works no undue prejudice to another party on trial." 94 N. C., at 835. Later cases have been somewhat more explicit. In the *Bryant* case curative instructions to the jury given immediately after a codefendant's guilty plea were held sufficient to avoid error prejudicial to the remaining defend-

ant. 236 N. C., at 747–748, 73 S. E. 2d, at 792. More recently, in the *Kerley* case, the court said that "[w]hen request therefor is made, it is the duty of the trial judge to instruct the jury that a codefendant's plea of guilty is not to be considered as evidence bearing upon the guilt of the defendant then on trial and that the latter's guilt must be determined solely on the basis of the evidence *against him* and without reference to the codefendant's plea." 246 N. C., at 161; 97 S. E. 2d, at 879. Indeed, the court expressed the view that even "a positive instruction probably would not have removed entirely the subtle prejudice that unavoidably resulted from [a codefendant's] plea . . . ." 246 N. C., at 162; 97 S. E. 2d, at 880.

In the present case the petitioner did not make any request that the jury be instructed to disregard Cain's guilty plea, and the court gave none, either at the time the plea was entered or in finally instructing the jury. A layman would hardly be aware of the fact that he was entitled to any protection from the prejudicial effect of a codefendant's plea of guilt. Even less could he be expected to know the proper course to follow in order to invoke such protection. The very uncertainty of the North Carolina law in this respect serves to underline the petitioner's need for counsel to advise him.

The post-conviction court made no finding specifically evaluating the prejudicial effect of Cain's plea of guilt and the trial judge's subsequent failure to give cautionary instructions to the jury. In any event, we cannot escape the responsibility of making our own examination of the record. *Spano* v. *New York*, 360 U. S. 315, 316. We hold that the circumstances which thus arose during the course of the petitioner's trial made this a case where the denial of counsel's assistance operated to deprive the defendant of the due process of law guaranteed by the Fourteenth Amendment. The prejudicial position in which the peti-

704

tioner found himself when his codefendant pleaded guilty before the jury raised problems requiring professional knowledge and experience beyond a layman's ken. *Gibbs v. Burke,* 337 U. S. 773; *Cash v. Culver,* 358 U. S. 633.

*Reversed.*

MR. JUSTICE CLARK, whom MR. JUSTICE WHITTAKER joins, dissenting.

The opinion of the Court bids fair to "furnish opportunities hitherto uncontemplated for opening wide the prison doors of the land." *Foster v. Illinois,* 332 U. S. 134, 139 (1947). Without so much as mentioning *Betts v. Brady,* 316 U. S. 455 (1942), it cuts serious inroads into that holding and releases petitioner, now a fourth offender though only 18 years old, from his 3-to-5-year sentence for larceny from the person. The Court does so on the ground of a single circumstance occurring at the trial, *i. e.,* the fact that a codefendant, David Cain, was permitted at the close of the State's case to plead guilty to "larceny, in such amount that it is a misdemeanor." The Court says that this circumstance "made this a case where the denial of counsel's assistance operated to deprive the defendant of the due process of law guaranteed by the Fourteenth Amendment." Strangely enough, the Court digs up this ground *sua sponte,* for neither the petitioner, the State, nor any court of North Carolina thought such circumstance produced sufficient "unfairness" in the trial even to discuss it, though its existence was mentioned in the recital of facts in petitioner's brief. The truth is that the courts of North Carolina have held affirmatively that petitioner received a fair trial, and that no special circumstances were shown to indicate that lack of counsel resulted in prejudice to petitioner.

The Court, however, speculates that Cain's change in plea "raised problems requiring professional knowledge

and experience beyond a layman's ken." The Court says that "The prejudicial position in which the petitioner found himself" resulted. But this is purely speculative and, I submit, does not at all follow. In fact, the jury—despite language in the court's charge which indicated the presence of "violence, intimidation and putting [the victim] in fear"—refused to find petitioner guilty of the common-law offense of robbery but only found him guilty of the lesser offense, larceny from the person. The record here would clearly support a verdict of guilty on the robbery charge. As I appraise the jury's verdict, it would be much more realistic to say that David Cain's plea of guilty influenced the jury not to find petitioner guilty of the greater offense. After all, Cain was only the driver of the car and participated no further in the criminal enterprise. In fact, the victim could not even identify him at the trial. Cain, unlike petitioner, had "wholeheartedly admitted" his guilt to the officers. This apparently brought on his plea. Petitioner on the other hand was the chief actor in the criminal enterprise. In addition, he had a criminal record, had served a term in prison, was twice an escapee therefrom, and from the record here gives every appearance of being a hardened criminal. Still the jury found him guilty only of the lesser offense, larceny from the person. It is reasonable to assume that it did this because Cain was permitted to plead to the lesser offense of larceny.

The Court cites three North Carolina cases* in support of the "potential prejudice" which it finds petitioner may have suffered from Cain's change of plea. None of these cases were cited by the parties. As I have said, the point was not raised in the briefs. But even the North Caro-

---

*State v. Hunter, 94 N. C. 829, 835; State v. Bryant, 236 N. C. 745, 747, 73 S. E. 2d 791, 792; State v. Kerley, 246 N. C. 157, 97 S. E. 2d 876.

lina cases cited by the Court do not support its new theory for reversal. All they indicate, as the Court frankly points out, is that care must be exercised to avoid "undue prejudice." In this regard the trial court fully protected petitioner all during the presentation of the case and gave a full, fair, and intelligent charge to which no objection is even now being made by petitioner. It is intimated by the Court that North Carolina law required a charge that Cain's plea not be considered as any evidence bearing on petitioner's guilt. But the short answer is that three North Carolina courts have considered this case and not one has even mentioned the point. The Court says this underlines the petitioner's need for counsel. I submit that he has had counsel since his Post Conviction Hearing Act case was filed some two years ago, and not once has the handling of the Cain plea been urged as error necessitating reversal.

While I do not wish to labor the issue, I must say that careful study of the case convinces me that it was a simple one and the trial was without complexity or technicality. The petitioner and three others induced their victim, an elderly man, to enter their car on the ruse that they would take him home for a dollar. It was in the nighttime and on the way to his home they drove into some woods. Petitioner ordered the victim out of the car, directed him to hold up his hands, and then went through his pockets, taking his billfold, containing some $24. The sole question for the jury was one of fact, namely, did petitioner take the old man's money? The State offered three witnesses in support of its position. The petitioner and his codefendant took the stand and gave their version of the affair, each admitting his presence on the scene but denying any robbery. There is not and never has been any claim that the State withheld any evidence or used perjured testimony or that incompetent evidence was admitted against the petitioner; or that he was denied

compulsory process for witnesses; or that he was ignorant or feeble-minded; or that the instructions of the court were not full and sufficient. As the Court itself finds, this "is not a case" where the age of the defendant or the deliberate "overreaching by court or prosecutor" resulted in an "unfair trial." Moreover, the Court finds that the case upon which the petitioner primarily depends, *Wade v. Mayo*, 334 U. S. 672 (1948), is in nowise controlling. It therefore follows that the lone special circumstances upon which petitioner depends, namely, his "youthfulness . . . his lack of formal education, his timely request for the appointment of counsel, his inability to hire a lawyer, and his own fumbling defense," do not show a lack of due process based on the trial judge's refusal to appoint counsel for him.

The record clearly shows, as the trial court found, that the petitioner "is intelligent, well informed, and was familiar with and experienced in Court procedure and criminal trials, having been previously tried on different occasions for careless and reckless driving, for breaking and entering, for driving while under the influence of intoxicating liquor, and for assault and robbery." Only at the previous term of the same court, petitioner had defended himself on the assault and robbery charge and was found not guilty by the jury. But what more could emphasize the petitioner's ingenuity in defending himself than his defense here? It was simple and direct. Both he and his codefendant had this story: The victim, before entering the car, had been drinking beer and on the way home gave petitioner the money to buy a pint of vodka. After they all partook of the vodka the victim became ill and nauseated while sitting in the back of the car. The petitioner then got in the back seat, and when the car was stopped he helped the victim out and the latter fell down on the ground. Petitioner then got back in the car and his group drove away. After leaving the victim,

petitioner's codefendant found the billfold in the car. It "almost went behind the [back] seat." It had no money in it but petitioner proposed that they take it back to the victim. They then returned to where the victim got out of the car but he was gone, and although they "got out and hollered for him," he could not be found. After the defendants left the scene, the billfold was thrown from the car by petitioner's codefendant and was not produced at the trial. This was indeed a shrewd defense. The only trouble was that the jury did not believe it.

On the facts of this record, I can see no basis for saying that petitioner was denied due process, *Betts* v. *Brady, supra,* and accordingly would affirm the judgment.