UNITED STATES of America ex rel. James ROBERTSON

v.

D. N. MYERS, Warden State Penitentiary, Graterford, Pennsylvania.

Misc. No. 2149.

United States District Court
E. D. Pennsylvania.

Oct. 13, 1960.

Ronald P. Wertheim, Asst. Defender, Philadelphia, Pa., court-appointed counsel for relator.

Victor H. Blanc, Dist. Atty., Paul M. Chalfin, First Asst. Dist. Atty., Charles L. Durham, Domenick Vitullo, Asst. Dist. Attys., Philadelphia, Pa., for respondent.

CLARY, District Judge.

This case presents the constantly recurring problem of a defendant's right to counsel in a state criminal proceeding. Relator, James Robertson, filed a petition for a writ of habeas corpus in this Court on December 24, 1959. The allegation upon which the Court granted a rule to show cause why the writ should not issue, and set a hearing thereon, is comprised within the limits of Paragraph 2 of relator's petition, which reads as follows:

"*Questions Involved.* 2. That the verdict was erroneously comprised as to Bill No. 87 December Sessions, 1956 wherein the defendant was denied adequate time to prepare his defense; that the trial court denied him counsel; that the evidence at the trial was perjured and that hearsay testimony was permitted."

To put the case into proper perspective, it will be necessary to recount the history leading up to the trial, conviction and sentence of the relator.

On Bill No. 324, November Sessions 1955, of the Court of Quarter Sessions of Philadelphia, Commonwealth of Pennsylvania, the relator here was charged with "Possession and Sale of Drugs". He appealed to the Court for the appointment of attorneys and Honorable Vincent A. Carroll, President Judge of the Court of Common Pleas No. 2, appointed Juanita Kidd Stout, Esquire, and Mabel G. Turner, Esquire, to defend him. After being adjudged guilty, he was sentenced to a term of imprisonment of 4 years in the Philadelphia County Prison. While on parole from that sentence he was indicted as of No. 87, December Sessions 1956, also on a charge of "Possession and Sale of Drugs", and was sentenced by the Honorable Judge Gerald F. Flood to a term of imprisonment of 2½ to 5 years in the Eastern State Penitentiary; sentence to date from any sentence imposed by Carroll, J., for violation of the aforesaid parole. It is on the basis of his conviction on Bill No. 87, December Sessions 1956, that he challenges the validity of his present incarceration.

 Robertson filed a petiton for writ of habeas corpus in the State Court as of September Term 1958, No. 1935, in the Court of Common Pleas No. 3 of Philadelphia County. This case was later, after denial of the writ, appealed to the Superior Court, which affirmed the lower Court. Com. ex rel. Robertson v. Myers,

189 Pa.Super. 199, 150 A.2d 391. An allocatur was refused by the Pennsylvania Supreme Court, and the Supreme Court denied his petition for a writ of certiorari, 361 U.S. 888, 80 S.Ct. 162, 4 L.Ed.2d 123. Relator, therefore, has exhausted his state remedies.

The sequence of events after his arrest on the present charge is as follows. He again sought the services of his previously court-appointed attorneys. However, Juanita Kidd Stout was at that time a Judge of the Municipal Court of Philadelphia and Mabel G. Turner was an Assistant United States Attorney. It was recommended that he engage the services of Sarah G. Duffy, Esquire, a member of the bar of Philadelphia County, and he retained her to represent him. He was charged with making a sale of heroin to an undercover police officer. He gave to his then attorney the names of three witnesses whom he stated could verify a defense alibi in that they would and could testify that he had been with them at all times involved in the narcotic sale. Miss Duffy properly got in touch with them and they did orally verify his alibi. However, when the case was listed for trial and they were told that they would have to take an oath and testify to what they had previously told her, they said they could not do so because what they had said before was untrue and they could not testify to the fact that he was with them at the important times involved and in fact they had not even seen him on the day in question. When Miss Duffy conveyed this information to Robertson and stated that she could not in conscience call these witnesses as they would definitely destroy his defense, he discharged her from further service. The following day his case was called for trial and he stated that he wanted to represent himself.

It is clear from the notes of testimony taken at that trial and the further evidence introduced at the hearing on the writ that the sole purpose of Robertson in discharging Miss Duffy was to call her as a witness to testify that •the three so-called alibi witnesses had said to her at one time that he (Robertson) had been with them on the day and at the time of the commission of the offense of selling heroin. As a matter of fact, the trial was delayed by the Trial Judge, as was the hearing in this Court, to bring Miss Duffy to court. At side bar and in the presence of Robertson she told the story to the Trial Judge who properly sustained an objection to the introduction of such hearsay testimony. Robertson claims that he was not told that the Court, if requested, would appoint an attorney for him. The record shows this statement to be completely false. He now claims that he did not know he could have compulsory process to bring the three so-called alibi witnesses to court. What he is trying to do now is the result of an afterthought rather than any lack of knowledge of his rights at the time of the trial. He now complains also that the Trial Judge improperly restricted his own argument to the jury in that he would not let him talk about matters not comprised within the sworn evidence in the case. It is crystal clear from the record that he was advised not only once but on several occasions that if he wished to present facts to the jury, the proper way was to take the stand and place them by sworn testimony before the jury. He chose, and intelligently chose, not to take the stand and in fact presented quite an able defense to the jury.

When the petition was first filed in this Court and hearing set thereon, it developed that relator had filed a petition for a writ of coram nobis in the State Court, and after the decision in that Court was handed down unfavorably to the petitioner, a hearing was held in this Court on July 28, 1960 on his present petition. At the first hearing this Court suggested that Robertson contact the Voluntary Defender Association of Philadelphia to seek its assistance. Ronald P. Wertheim, Esquire, Assistant Defender, interviewed the relator, obtained all of the information possible from him and, after researching the law, advised him that he saw no record basis for sustaining a writ in this Court. When

the case was actually called for hearing in this Court, the Court requested Mr. Wertheim to be present and render any technical assistance possible to Robertson. That he performed his assignment well is evident from the record. In addition to that, on September 7 1960, he presented the Court with a memorandum of law in support of Robertson on the basis of the decision of the Supreme Court of the United States in the case of Hudson v. State of North Carolina, 1960, 363 U.S. 697, 80 S.Ct. 1314, 4 L.Ed.2d 1500, citing as his contention that the facts of the Robertson case might bring it within the scope of the Hudson case so as to constitute the "potential prejudice" emphasized in that decision.

 I do not, however, believe that the Hudson case is applicable to the instant case. In that case a co-defendant in the presence of the jury midway through the trial changed his plea to guilty. The petitioner also charged that he was not permitted to have the aid of counsel.

The Supreme Court held that this fact (the plea of guilty) in the course of the trial and in the presence of the jury "raised problems requiring professional knowledge and experience beyond a layman's ken." The difference between that case and the case at bar requires no comment in view of the factual situation set out above. Robertson chose his own trial tactics, which failed. The record of the case destroys the most effective allegation in any habeas corpus proceeding that the Trial Court denied him counsel. The answer to his allegation that he was denied adequate time to prepare his defense is that he never asked for such time, although he was told very specifically by the Trial Judge that he could, even while the case was on trial, obtain the services of an attorney, which would of course automatically have meant the withdrawal of a juror and a continuance of the case. This invitation was rejected by him and, therefore, his complaint is without merit. Any reference to the so-called perjury is unnecessary. The Court examined both the record of the preliminary hearing and that of the trial. Except for minor discrepancies, there was no evidence of lying on the part of the prosecution witness. This complaint must also fail.

It appears to the Court that the comments of Chief Judge Sobeloff in Holly v. Smyth, 4 Cir., 280 F.2d 536, at page 539, decided June 3, 1960, are peculiarly applicable here.

"In all federal criminal trials involving serious offenses, defendants are entitled, under the Sixth Amendment, to be advised of their right to an attorney and to have one appointed for them if they are financially in need. Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Von Moltke v. Gillies, 1948, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309. In state criminal trials, however, the Supreme Court has not formally abandoned the distinction, first made in Betts v. Brady, 1942, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, between capital and non-capital offenses. If the offense is capital, the lack of counsel, unless the right is intelligently waived, is held to be a violation of due process of law under the Fourteenth Amendment to the Federal Constitution, voiding the conviction and sentence. Powell v. State of Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Williams v. Kaiser, 1945, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398; Tomkins v. State of Missouri, 1945, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407; Hawk v. Olson, 1945, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61; Reece v. State of Georgia, 1955, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77. In noncapital state cases, on the other hand, the state's failure to afford a defendant the assistance of counsel is said to violate due process only 'when there are special circumstances showing that without a lawyer a defendant could not have an adequate and fair defense.' Palmer v. Ashe, 1951, 342 U.S. 134,

135, 72 S.Ct. 191, 192, 96 L.Ed. 154. See also: Betts v. Brady, supra; Harvey v. Smyth, 4 Cir., 1958, 255 F.2d 21; Morrison v. Smyth, 4 Cir., 1960, 273 F.2d 544."

There are no special circumstances here which indicate that without a lawyer this defendant could not and did not have an adequate and fair defense. On the contrary, the record of the trial negates such a contention. The trial, therefore, with respect to the absence of counsel does not violate due process and the writ must be denied.