Joseph HOBBS, Jr., Appellant,

v.

Vernon L. PEPERSACK, Warden of the Maryland Penitentiary, Appellee.

No. 8475.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 4, 1962.

Decided March 29, 1962.

F. D. G. Ribble and Daniel J. Meador, Charlottesville, Va. (Court-appointed counsel) for appellant.

Robert F. Sweeney, Asst. Atty. Gen., of Maryand (Thomas B. Finan, Atty. Gen., of Maryland, on the brief) for appellee.

Before SOBELOFF, Chief Judge, and BRYAN and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Chief Judge.

Fifteen years ago, Joseph Hobbs, indicted in the Criminal Court of Baltimore City on eight counts charging armed robbery with a deadly weapon, pleaded guilty to three of them, and was sentenced to concurrent twenty year terms. In the intervening fifteen years he has filed more than forty petitions for habeas corpus in the Maryland courts and at least eight in the federal courts in an effort to set aside these convictions. His contention in the District Court in this

case, as in the earlier proceedings, was that he was unconstitutionally denied the assistance of counsel at his trial. Specifically he alleged the following in his most recent petition from the denial of which he now appeals:

"When the Petitioner was taken before the Court, he had been led to believe that he was not going to Court to be tried that day. For he had been informed at the Baltimore City Jail, that he was going to be arraigned and to have counsel appointed to represent him and not to be tried.

"Therefore, when the Petitioner was taken before the Court he did not know that he was going to be tried and sentenced. And even if he had known, he could not have defended himself, due to his lack of knowledge of Court procedure at that time. For the Petitioner had never before been involved in a criminal or law Court case before.

"Therefore, the Petitioner went to Court expecting to be arraigned and have counsel appointed to represent him. But instead he was tried and sentenced by the Court without counsel and without being informed of any of his rights as an accused person, in a Criminal proceeding.

\* \* \* \* \* \*

"The Petitioner alleges that his civil constitutional and all other rights were violated when his request for counsel to represent him was ignored by the trial judge."

Denial of relief was predicated on the ground that the petition was repetitive; the District Court found that "the grounds in the present petition are generally the same as those raised in previous petitions." No hearing was held nor was the petitioner's claim considered on its merits.

There is no contention that Hobbs has failed to exhaust state remedies. The two questions for decision are whether his allegations raise a substantial question of denial of due process, and, even

if so, whether the District Court had discretionary authority to decline to consider them. Since no court has ever found to the contrary, we will, for purposes of this appeal, take as true his allegations that he was not in fact represented by counsel at his trial and that he did not knowingly waive his right to counsel.

I

In Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442, the defendant, who had been thrice convicted of felony and sentenced to the penitentiary, complained of a deprivation of constitutional rights in being denied counsel for his defense in a proceeding brought under the Virginia recidivist statute in which an additional ten year sentence was imposed upon him. The state officials argued that counsel was unnecessary because the issue involved in the recidivist proceeding was simple and uncomplicated: whether Chewning was in fact the man previously convicted. The Supreme Court, however, concluded otherwise, pointing out that such a proceeding is not a simple one. Quoting from Reynolds v. Cochran, 365 U.S. 525, 531, 81 S.Ct. 723, 5 L.Ed.2d 754 (1961), it stressed, "We cannot know that counsel could not have found defects in [earlier convictions] that would have precluded [their] admission in a multiple-offender proceeding." Chewning v. Cunningham, supra at 4145. The Court illustrated the variety of issues that might have been tendered had the defendant been afforded counsel, such as whether the courts rendering the prior judgments had jurisdiction over the offenses and over the defendant, whether at any of the trials resulting in these underlying convictions the defendant was unrepresented by counsel or the trials were otherwise unfair, and whether the recidivist proceeding itself might be subject to attack as an *ex post facto* application of the law or susceptible to a plea of double jeopardy.

It was the Court's holding that, in the absence of knowing waiver, the state was obligated under the Fourteenth

Amendment to appoint counsel to defend the accused since the "nature of the charge" was "too intricate for a layman to master." It is noteworthy that there was no showing in Chewning that at trial any of the legal points mentioned by the Court would have been raised by counsel, or that there was a basis for raising them in a new trial. It was deemed enough that such questions "may well be considered by an imaginative lawyer." The Court reasoned that it was unnecessary to show actual prejudice from the absence of counsel, because the charge was "so complex, and the potential prejudice so great." [1]

▍ The present case falls squarely within the rationale of Chewning. The crime with which Hobbs was charged was robbery with a deadly weapon with a potential aggregate sentence of 160 years on the eight count. Anno. Code of Maryland, art. 27, § 488 (1957). As distinguished from simple robbery, id. § 486, which carries a maximum sentence of ten years, the use of a deadly weapon in perpetrating a robbery doubles the possible punishment. The statute, however, not only fails to define the term "robbery," but it also gives no indication what weapons are considered deadly. The answer to both questions can be found only in the Maryland case law. Even assuming the doubtful proposition that Hobbs might know how to research such a problem, the case law itself furnishes no clear answer. For example, the Court of Appeals of Maryland has held that a loaded gun may be a deadly weapon while an unloaded one may not. Davis v. State, 225 Md. 45, 168 A.2d 884 (1961). Also, a knife may be either a

deadly weapon or only a dangerous one, depending on the size of the blade and manner of its use. See Barefoot v. State, 222 Md. 67, 158 A.2d 649 (1960). Likewise, a weapon not deadly *per se*, such as a club, may not even be dangerous within the meaning of the statute unless utilized in a threatening manner. Davis v. State, supra. At all events, to secure a conviction for the more serious degree of robbery, the state must prove that the defendant had both the intent to commit the robbery and the intent to use the deadly weapon in furtherance thereof. Midgett v. State, 216 Md. 26, 139 A.2d 209, 217 (1958); Hayes v. State, 211 Md. 111, 126 A.2d 576, 578 (1956). Manifestly, only skilled counsel could determine whether a plea of guilty was warranted or the state's evidence insufficient to support the charges.

In the Chewning case, supra, the legal defenses which could possibly have been raised against the information charging recidivism were challenges of prior convictions and double jeopardy. In McNeal v. Culver, 365 U.S. 109, 114–117, 81 S.Ct. 413, 5 L.Ed.2d 445 (1961), the question of related and included offenses was held to require the appointment of counsel. In Hudson v. North Carolina, 363 U.S. 697, 702–704, 80 S.Ct. 1314, 4 L.Ed.2d 1500 (1960), the tactical situation resulting from a plea of guilty unexpectedly entered by a co-defendant during the course of trial established the need of counsel; in Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945), it was the legal question whether an offense committed on an Indian Reservation could be tried in a state court.[2] Certainly, the problems inherent in defending

---

1. Earlier Supreme Court cases holding that the state is obligated to appoint counsel to defend an indigent accused where the issues involved in the criminal proceedings are legally complex are McNeal v. Culver, 365 U.S. 109, 114–117, 81 S.Ct. 413, 5 L.Ed.2d 445 (1961); Hudson v. North Carolina, 363 U.S. 697, 702–704, 80 S.Ct. 1314, 4 L.Ed.2d 1500 (1960); Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945). To the same effect is our decision in Jones v. Cun-

ningham, 297 F.2d 851 (4th Cir. 1962); see also Holly v. Smyth, 280 F.2d 536 (4th Cir. 1960) (Juvenile defendant).

2. See Jones v. Cunningham, 297 F.2d 851 (4th Cir. 1962), in which we found a denial of due process in the failure to appoint counsel where the crimes charged were (1) breaking and entering with intent to commit larceny, and (2) the larceny itself, and where under the state law the charges might have been subject to challenge as duplicitous.

against a charge of robbery with a deadly weapon are no less complex and baffling to a layman than the legal issues in those cases. If Hobbs, faced with such serious charges, was not in fact represented by counsel at this trial and did not intelligently waive his right to counsel, we must hold that the proceedings were fundamentally unfair and void. The question remains, however, whether the District Court acted within its discretion in declining to entertain the petition because of the past history of the case.

## II

District courts are vested with discretion under the statute, 28 U.S.C.A. § 2244, to decline to consider on habeas corpus contentions previously considered and rejected by a judge or court of the United States. However, the court is permitted this discretion only if the prior decision or decisions determined "the legality of [the] detention," and the court is satisfied that the "ends of justice will not be served" by a new inquiry. Ibid. See McCoy v. Tucker, 259 F.2d 714, 717 (4th Cir. 1958).

Although Hobbs had seven times petitioned in vain for federal habeas corpus, none of the denials was predicated on a consideration of the merits of his complaint, and, therefore, none can be considered a determination of "the legality of [the] detention." [3] See Price v. Johnston, 334 U.S. 266, 288, 293, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); cf. Salinger v. Loisel, 265 U.S. 224, 231–232, 44 S.Ct. 519, 68 L.Ed. 989 (1924). Section 2244 is designed to safeguard against the multiplication of meritless petitions by prisoners who have already had the same issues considered and decided. However, the doctrine should not be invoked against a petition which seeks again an adjudication theretofore repeatedly sought but never obtained on the merits. For this reason, the District Court was not authorized under the statute to defer to the earlier denials of relief in the federal court.

---

3. Hobbs' first petition in federal court was filed in 1948. This complained of the denial of counsel but was rejected because he had not then exhausted his state remedies. Hobbs v. Swenson, Civil No. 4071, D.Md., July 8, 1948. The second, likewise citing the denial of counsel, was also denied for failure to exhaust state remedies. In re Hobbs, Civil No. 4384, D.Md., March 10, 1949. In his third petition in the federal court Hobbs once again alleged the denial of counsel. He had by then exhausted his state remedies; the court, however, did not discuss his contention and summarily denied relief. In re Hobbs, Civil No. 4780, D.Md., November 9, 1949. Petition number four received the same treatment. In re Hobbs, Civil No. 4384, D.Md., September 17, 1951. Hobbs' fifth petition was rejected on the ground that it was repetitive. In re Hobbs, Civil No. 5838, D.Md., May 7, 1952. An appeal was presented *pro se*, but was dismissed because Hobbs had failed to obtain a certificate of probable cause. Hobbs v. Swenson, 199 F.2d 268 (4th Cir. 1952). His sixth petition complained only of cruel treatment by the prison officials, and was denied for failure to exhaust state remedies. Hobbs v. Pepersack, Civil No. 12,300, D.Md., July 1, 1960. Number seven, which reasserted the lack of counsel, was denied because of the past history of the case in the state courts. Hobbs v. Pepersack, Civil No. 12,300, D.Md., May 1, 1961. Hobbs' present effort in the federal court, his eighth, was denied as repetitive. Hobbs v. Pepersack, Civil No. 12,300, D.Md., August 11, 1961.

In connection with petition number seven where relief was denied on the basis of the prior state court cases dealing with Hobbs' contention, it is interesting to note that the Maryland Court of Appeals has apparently never considered Hobbs' claim on the merits. See State ex rel. Hobbs v. Warden, 194 Md. 722, 70 A.2d 814 (1950); Hobbs v. Warden, 197 Md. 692, 80 A.2d 38 (1951); Hobbs v. Warden, 219 Md. 684, 148 A.2d 380 (1959); Hobbs v. Warden, 220 Md. 685, 155 A.2d 70 (1959). It is true that Hobbs was given a hearing by the state trial court on his contention in 1949, but at the conclusion of the evidence, which undisputably showed that he was not represented by counsel at his trial, the state judge summarily denied relief. None of his later petitions in lower state courts was considered on the merits.

In short, as far as can be determined, to this day Hobbs' claim has never received a full consideration in any court.

Likewise, it did not lie within the District Court's discretion to refuse to consider Hobbs' contentions on the basis of the prior state adjudications. While it is true that district courts may sometimes defer to a state court's resolution of the conflicting historical facts,[4] they may not avoid the duty of making an independent evaluation of the historic facts according to the appropriate constitutional standard, out of deference to the state court's legal determination. Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). As stated in Holly v. Smyth, 280 F.2d 536, 543 (4th Cir. 1960), a case also involving the right to counsel, a prior determination of law by the state courts "in no way relaxes the duty of the District Court to make its own constitutional determination."[5]

Finally, we think it advisable to add that district courts should not dismiss petitions which on their face state a denial of due process, without calling for an answer from the state authorities. The Supreme Court has held that where the petition is repetitive the warden has the initial burden of showing an abuse of the writ, and unless the court's files clearly indicate such an abuse, the warden should be notified to file an answer so that the issue may undergo orderly treatment. Price v. Johnston, 334 U.S. 266, 292, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948). The notification may be formal or informal, as the court may deem appropriate. If this had been done in the present case the court might not have disposed of the petition as it did. Moreover, the practice of developing the record below, to this extent at least, would be a valuable aid to the Court of Appeals, not only in ultimately reviewing the District Court's action, but also in passing on applications for certificates of probable cause for appeals. See Shelton v. South Carolina, 285 F.2d 540 (4th Cir.

1961); Yaeger v. Director, 298 F.2d 55 (4th Cir. 1962).

The case will be remanded to the District Court. If the state so desires, a hearing may then be held to determine whether the defendant was in fact represented by counsel at his trial, or whether he intelligently waived his right to counsel. If the state does not contest the truth of the petition, or offer any other reason for denying relief, the District Court should afford the state a reasonable opportunity to retry the prisoner. In default of this the court should order his release. Compare Rogers v. Richmond, 365 U.S. 534, 549, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961).

So ordered.

4. See Brown v. Allen, 344 U.S. 443, 464–465, 73 S.Ct. 437, 97 L.Ed. 469 (1953); Holly v. Smyth, 280 F.2d 536, 542–543 (4th Cir. 1960).

5. See Clark v. Warden, 293 F.2d 479, 481–482 (4th Cir. 1961); Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960).