**STATE of Missouri, Respondent,**

v.

**Archie L. LAHMANN, Appellant.**

**No. 55460.**

Supreme Court of Missouri,
Division No. 1.

Dec. 14, 1970.

John C. Danforth, Atty. Gen., John W. Cowden, Asst. Atty. Gen., Jefferson City, for respondent.

Ronald L. Boggs, Ellsworth Cundiff, Jr., St. Charles, for appellant.

HIGGINS, Commissioner.

Archie L. Lahmann was convicted by a jury of burglary, second degree, and stealing. The jury failed to agree on punishment, and the court assessed punishment at consecutive terms of five years' imprisonment for each offense. Sentence and judgment were rendered accordingly. §§ 560.070, 560.095, 560.110, V.A.M.S.; Criminal Rule 27.03, V.A.M.R.

Appellant does not question the sufficiency of evidence to support his conviction and a brief statement demonstrates a case of burglary, second degree, and stealing against him.

Carl Waldvogel managed the St. Charles Dairy Store at 2600 West Clay, St. Charles (St. Charles County), Missouri. At 11:00 p. m., June 17, 1969, he and an employee removed four to five hundred dollars in paper and coins from the cash register, put it in a moneybag and stored it in a freezer for safekeeping. They closed and locked the premises, including the gate which enclosed the refrigeration compressors at the rear of the premises.

At 1:00 a. m., June 18, 1969, Mr. Waldvogel returned to the premises with the police and found a hole cut in the ceiling immediately above the freezer where the money had been stored. Entry had been made by breaking the lock on the rear gate, going into the gable end of the building and cutting through the ceiling. The store had been "messed up" and two moneybags and the money were missing. Mr. Waldvogel saw the moneybags and some money at the police station at 12:30, June 18, 1969, and identified them at trial. He estimated the money loss to be in excess of $400.

Roger Lee Williams lived in an apartment adjacent to the St. Charles Dairy Store premises. At 11:45 p. m., June 17, 1969, he stopped defendant and two other men as they attempted to leave in an automobile which had been parked in the

street near the dairy store. He had seen the men earlier standing between the apartments. "They went off in the weeds somewhere. I lost them for maybe ten minutes and I circled around and I was looking for them in the field and I couldn't find them so I come back where I last seen them and then I heard some clanking noise, beating noise and I looked up and there was three of them. They were beating on something just right above the car*s*." They threw something into the trunk and into the car, after which they started to drive away. "I walked up to the car and I told them to stop. I wanted to talk to them, and this man here (defendant), he was driving and he didn't want to stop. He started to back off so I pulled a pistol out and made him stop." He made the men get out of the car. "The officers came and I was standing there holding them at gun point and he took my gun and he walked over and looked in the car and there was some money bags there and he reached in and picked up the money bags. * * *" Defendant was the owner and operator of the automobile. The moneybags taken from the car were identified by Mr. Williams at trial and they were the same bags identified by Mr. Waldvogel as missing from his store following its burglary.

Robert J. Boehle was the police officer who received a dispatch to the scene and relieved Mr. Williams of defendant and his other two prisoners. He looked into the automobile and "saw two money bags and money laying on the floor board." He took the bags and money into his custody and identified them at trial. This identification was identical to that of Mr. Waldvogel.

Reciting that "While justice should be administered with dispatch, the essential ingredient is orderly expedition and not mere speed," Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, [11] 3 L.Ed. 2d 1041 " * * * delay alone, unfortunate though it is, is not sufficient cause to bypass the orderly processes of judicial review," Coppedge v. United States, 369 U.S. 438, 452, 82 S.Ct. 917, 925, 8 L.Ed.2d 21, and "In the absence of express statutory authorization, courts have been extremely reluctant to allow proceedings more summary than the full court trial at common law," New Hampshire Fire Ins. Co. v. Scanlon, 362 U.S. 404, 407, 80 S.Ct. 843, 845, 4 L.Ed.2d 826, appellant contends the court erred in denying his requests for continuance, to employ other counsel, and to permit counsel to withdraw.

Appellant's citations are not similar on their facts, and "The sufficiency of an application for continuance is necessarily dependent upon, and often intrinsically interwoven with, many facts and circumstances peculiar to the case in question. * * * The court must weigh the factors both of affording the accused adequate opportunity to prepare his defense and of expediting the trial so as to avoid unreasonable delay," State v. Le Beau, Mo., 306 S.W.2d 482, 486 [3], which is to say, the grant or refusal of continuance rests within the sound discretion of the trial court subject to review. State v. Belleville, Mo.App., 362 S.W.2d 77, 80 [2–5]; State v. Ross, Mo., 375 S.W.2d 182, 185 [3–6].

The matter of continuance arises from and is for ruling under these circumstances on the record: Defendant at time of trial was 30 years old and possessed of an eighth grade education. He was first accused on June 18, 1969, and was accorded a preliminary hearing June 26, 1969. The information was filed June 30, 1969, and he was released on bond on that date. Sometime between arraignment July 7, 1969, and July 18, 1969, he employed Ronald L. Boggs as counsel and, on July 18, 1969, Mr. Boggs filed a motion to remand the cause for preliminary hearing with assistance of counsel. The motion was denied August 4, 1969, and on that date defendant, with Mr. Boggs present, entered a not guilty plea. At defendant's request the cause was continued to September 2, 1969. On September 2, 1969, de-

fendant secured another continuance to October 6, 1969, and on that date the cause was set for trial on November 25, 1969. Defendant was being held in jail in St. Louis after August 17, 1969, on charges in that jurisdiction.

Defendant appeared with counsel for trial November 25, 1969, at which time Mr. Boggs, when asked if ready for trial, stated that he had been advised by defendant the previous evening that he no longer wished him as counsel. "He further disclosed to me this morning * * * that he did not trust me and he hasn't told me everything about the case." Defendant stated, "I just don't feel that he can handle the case because I haven't told him everything, and he was the only lawyer I could find to get the case at the present time." The court indicated that none of this colloquy constituted any lawful reason not to proceed to trial with Mr. Boggs as counsel. Mr. Boggs then requested leave to withdraw, after which the court granted a 15-minute recess for Mr. Boggs and his client "to determine whether or not there are matter(s) * * * that have been undisclosed to you that might affect your ability to proceed. * * *"

After the recess Mr. Boggs recited that he had "discussed the availability of a motion to suppress certain items of evidence with the defendant on several occasions and at that time the defendant told me repeatedly that there was no basis for such a motion * * *; that he has informed me this morning that if the Court demands that the trial proceed today that he does wish me to make the motion to suppress the * * * two bags of U. S. currency * * *. I would further request * * * additional time * * * to investigate the basis for his motion. * * *"

The court then granted leave to be heard on a motion to suppress "at this time or to have any voir dire examination prior to the admission of certain evidence * * * we will have the hearing now" or at the time "evidence is about to be produced. * * *" Continuance was denied and counsel orally moved to suppress the two bags and money as a product of unlawful search and seizure because seized without search warrant. The court accepted the oral motion and proceeded to hear it at which time Mr. Boggs conferred with his client and advised the court that "the defendant * * * does not wish to offer any oral testimony concerning the motion previously made, but would * * * request additional time in which to obtain evidence in support of his motion." The request for continuance was denied and the court proceeded to empanel a jury.

During the qualification of the jury Mr. Boggs advised the court "that the defendant has instructed me not to participate in this trial in any manner, either in objecting, cross examining witnesses, voir dire, closing or opening statements. He wishes no help from me and that he requests I not say anything in his behalf * * * I would request the advice of the Court as to what manner the Court would wish me to proceed." The court then called a recess to determine the problem thus posed and advised the defendant "that your having retained Mr. Boggs as your lawyer I am sure you are aware of his profession and his occupation is the representation of persons in court. He is a man trained in the law, he is familiar with the proceedings. He is familiar with the trial of cases in court. You may or not have had experience along this line.

"* * * you should consult with your attorney. And you should allow him to represent you in court. Now, the Court cannot force you to retain counsel nor to accept the counsel that you have retained. * * * you may take what action you want, but * * * you should consult with your attorney. And together with him arrive at a decision as to how he should represent you. * * *

"* * * I am going to order that this case proceed to trial. I am going to sug-

gest that you reconsider any matter that you may have discussed with your attorney concerning how he proceed to represent you in this case. * * * and, Mr. Boggs, with your duty as an officer of this Court you must represent your client in the best way you see fit consistent with his instructions to you." The court then granted additional time for conference after which Mr. Boggs advised the court that "after a conference with the defendant he has once again instructed me to sit mute and take no part in the proceedings whatsoever. * * *" The court confirmed this advice and direction with the defendant and ordered the trial to proceed.

During the trial the court reiterated the foregoing advice and gave counsel and the defendant the opportunity and right to examine jurors, make opening statements, examine and cross-examine witnesses, make closing arguments, and participate in the preparation of instructions. Counsel did not participate because so instructed by the defendant, and the defendant continued to stand on his direction to his lawyer not to participate. Defendant specifically directed his lawyer not to participate, and defendant waived his right to participate in all succeeding trial incidents.

The record is silent with respect to any confidence allegedly withheld by defendant from his lawyer and with respect to what, if any, evidence counsel or defendant had in mind bearing on the motion to suppress.

■ Tested by the previously stated principles, this record demonstrates that the trial court did not abuse its discretion in refusing defendant's oral request for continuance in order to make further preparation or to discharge his retained attorney and procure another. The record shows that the defendant had over three months in which to prepare his case and consult with his attorney. Although he alleges he withheld information the record does not show what such might have been, nor does it show what additional evidence was expected to be available on the motion to suppress. Since defendant refused to adduce any evidence on his motion it is doubtful any persuasive evidence existed.[1] Several continuances had been granted and defendant and his lawyer had consulted. The record shows the whole situation to be a series of tactics on defendant's part to avoid trial on several occasions and particularly on November 25, 1969. The situation was thus caused or contributed to by defendant himself and he should not now be permitted to convict the trial court of an abuse of discretion in refusing another continuance. State v. Ross, supra, 375 S.W.2d l. c. 185 [6]; State v. Clary, Mo., 350 S.W.2d 809, 811–812 [3].

■ Similarly, permitting withdrawal of counsel is within the sound discretion of the court, State v. Mimms, Mo., 349 S.W.2d 925, 927 [2, 3], and the record does not show an abuse of discretion in ruling against withdrawal. Defendant retained Mr. Boggs during July, 1969, and he represented defendant without question until the night before trial. Defendant gave no reason for his attempted dismissal of the lawyer other than to assert he had failed to disclose all the facts but without stating what any of such facts might be. Appellant suggests he was unable to contact other counsel because he was in jail in St. Louis but this was not so for the entire time from June to November, and he suggested no dissatisfaction with Mr. Boggs until the eve of trial.

■ Appellant argues also that his refusal to allow his attorney to participate resulted in a waiver of his rights and that the record does not reflect the presence of age, experience, education, and mental capacity upon which to determine his ability to waive. See Hudson v. North Carolina, 363 U.S. 697, 701, 80 S.Ct. 1314, 4 L.Ed.2d 1500.

---

1. Note from the statement that the bags and money, subject of the motion, were in plain sight in defendant's automobile when seized.

**564**

Contrary to this assertion, the record shows defendant to be articulate, calculating, and experienced, and despite his limited education, his maturity and understanding are evident.

 Appellant's second contention is that it was error for the court to overrule his motion to remand his case for preliminary hearing with the assistance of counsel. His only argument is that he was thus deprived of his right to a fair trial under Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387.

This case was tried before Coleman v. Alabama was decided June 22, 1970, and appellant does not undertake to demonstrate how he might otherwise have been prejudiced by the court's ruling. Consequently, on this point, suffice to say that considerations, if any, arising from Coleman v. Alabama are not applied retroactively. State v. Caffey, Mo., 457 S.W.2d 657, 663 [9].

Appellant has filed a brief *pro se* to present his contention that the court erred "in not giving appellant a hearing on the motion to suppress when it was timely made."

This contention is also summarily answered because the record shows affirmatively that the court offered to hear testimony on the oral motion to suppress and the offer was declined by counsel following consultation with defendant.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.