Claude O. JONES, Jr., Appellant,

v.

W. K. CUNNINGHAM, Jr., Superintendent of the Virginia State Penitentiary, Appellee.

No. 8385.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 3, 1961.

Decided Jan. 3, 1962.

John W. Edmonds, III, Richmond, Va. (Court-assigned counsel), for appellant.

Reno S. Harp, III, Asst. Atty. Gen., of Virginia (Frederick T. Gray, Atty. Gen. of Virginia, on brief), for appellee.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and MICHIE, District Judge.

SOBELOFF, Chief Judge.

This state prisoner, Claude O. Jones, now in the custody of the Warden of the Virginia Penitentiary under consecutive sentences aggregating thirty-nine years, claims that he was denied the effective assistance of counsel at his trial on informations containing three counts of breaking and entering, two of grand larceny and one of possession of burglary tools. His claim was rejected by the state courts without a hearing, and certiorari was denied by the Supreme Court "without prejudice to an application for writ of habeas corpus in the appropriate United States District Court." Jones v. Smyth, 364 U.S. 853, 81 S.Ct. 72, 5 L.Ed.2d 76 (1960). Jones then addressed a petition for such a writ to the United States District Court for the Eastern District of Virginia, but this likewise was dismissed without a hearing. No plenary hearing ever having been given the petitioner in any court upon the issue raised, the only question on this appeal is whether sufficient facts are alleged in the petition to require the District Court to afford him an opportunity to prove them. For purposes of this inquiry, his allegations must be taken as true. They are as follows:

"On August 8, 1951, petitioner was arrested at his parents' home by the authorities of Lunenburg County, Virginia, and subsequently

lodged in jail without first having been presented with a warrant of arrest on any valid charge.

"That at the time of the petitioner's arrest he was seriously ill and in an alcoholic daze and was not permitted to contact an attorney at law or his family.

"That he was interrogated constantly by the authorities in a coercive manner and denied medical attention until a confession was obtained; that some four or five days after petitioner was forced to submission and unwittingly agreed to a statement amounting to guilt.

"That upon being forced into a statement by the authorities, petitioner was still held incommunicado in jail, and not presented before the Court to face any formal charge until the 18th day of August, 1951, ten days after his unlawful arrest, at which time, he learned for the first time what he was charged with.

"That upon appearing in Court petitioner was forced into a plea of guilty, and only after pleading, was he assigned counsel to represent him; that this was the first contact allowed with an attorney at law since his unlawful incarceration, and that upon his court-appointed counsel stepping into the case, the said counsel remarked to the petitioner:. 'Well, you've made a confession there's nothing I can do for you.'

"That thereupon the attorney for the Commonwealth brought forth his informations and told the appointed counsel that petitioner had already agreed to waive indictment and trial by jury and that he had the waivers and informations prepared; that then the court-appointed attorney had the petitioner to sign the waivers.

"That thereafter petitioner was tried within a matter of minutes on the six charges against him, and on the 30th day of August, 1951, petitioner was sentenced to confinement in the penitentiary for an aggregate sentence of thirty-nine (39) years."

Although it may be a complete fabrication, this detailed account raises substantial constitutional issues. It follows, therefore, that the District Court erred in dismissing the petition without a hearing, and its judgment must be reversed.

██ Of those protections which the state is required under the Constitution to furnish an indigent defendant, perhaps the most salutary is the "guiding hand of counsel." See Powell v. State of Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 77 . L.Ed. 158 (1932). While in noncapital cases not every defendant is constitutionally entitled to this protection, the Supreme Court has laid down the rule that where the circumstances are such as to prevent an indigent defendant from adequately conducting his own defense, the state, in the absence of waiver, is obligated to appoint counsel to defend him. See Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945); Uveges v. Com. of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1948); Palmer v. Ashe, 342 U.S. 134 (1951). Review of the relevant cases convinces us that the State was obligated to provide the present petitioner with counsel.[1]

1. In recent cases argued before this court, it has been strongly urged upon us that the course of decisions in the Supreme Court indicates that it is prepared to abandon the distinction made in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), between capital and non-capital offenses in state trials in measuring the federal constitutional right to counsel. Reliance is placed on Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954); Griffin v. People of the State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); and Kinsella v. United States, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960). Whatever the merit of this argument, the decision in the present case does not depend upon it.

The crimes of which Jones stood accused, though not capital, were of a serious nature and carried in combination a maximum penalty of seventy years. He alleges that he was brought into court and required to plead while under the compulsive effect of an illegally obtained confession. Unaided, he was without knowledge of the legal steps he would have to take in his own behalf to exclude this confession, nor could he know at what stage of the trial such steps must be taken lest the point be irretrievably waived. Whether counsel could have successfully attacked the confession, we need not say. It is plain, however, that the procedural and substantive problems of such a challenge and the obvious advantage of interposing it at the trial and preserving the point for review on direct appeal rather than relying on a later collateral attack[2] strongly indicate this petitioner's need for professional guidance.

A second question confronting the petitioner, with which, as a layman, he was not competent to deal, was whether under Virginia law he could properly be convicted of both breaking and entering with intent to commit larceny and the larceny itself. On this issue the Virginia Supreme Court of Appeals has said, "Where the breaking and entering with intent to commit larceny and the commission of the larceny are one continuous act, the accused can only be convicted of the offense of breaking and entering with intent to commit larceny, * * *." Clark v. Commonwealth, 135 Va. 490, 115 S.E. 704, 706 (1923).[3] It would be unreasonable to expect a layman to be aware of this state decision or to understand how it might help him. These are problems which only a skilled lawyer could handle, and on this issue also the petitioner was sorely in need of professional counsel.[4]

Analogous to the present case are Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945), where the legal question was whether an offense committed on an Indian Reservation could be tried in a state court, and the Court held that this was of sufficient intricacy to require the appointment of counsel; and Hudson v. State of North Carolina, 363 U.S. 697, 80 S.Ct. 1314, 4 L.Ed.2d 1500 (1960), where the Court held that the tactical situation created by a plea of guilty unexpectedly entered by a co-defendant during the course of trial established the need of counsel. Surely, the two legal problems, with which the present petitioner was faced, are as baffling to a layman as the jurisdictional question in Rice v. Olson, or the jury instruction problem in Hudson v. North Carolina.[5]

We therefore reach the question whether, under the facts alleged, the State complied with its duty to supply counsel or gave it a merely formal recog-

2. See Reck v. Pate, 367 U.S. 433, 448, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961) (dissent).

3. Compare Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961).

4. In Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398 (1945) the Court said: " * * * 'Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. * * * Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one.' * * * The decision to plead guilty is a decision to allow a judgment of conviction to be entered without a hearing—a decision which is irrevocable and which forecloses any possibility of establishing innocence. * * * He needs the aid of counsel lest he be the victim of overzealous prosecutors, of the law's complexity, or of his own ignorance or bewilderment." 323 U.S. at 475, 476, 65 S.Ct. at 366.

5. See also, McNeal v. Culver, 365 U.S. 109, 81 S.Ct. 413, 5 L.Ed.2d 445 (1961), where the problem of related and included offenses was held to require the appointment of counsel.

nition. The act of appointing counsel is not enough if in the circumstances the traverser is not afforded in any substantial sense professional advice and assistance.

In Powell v. State of Alabama, 287 U. S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Supreme Court held that the appointment of "all the members of the bar" and an out-of-state attorney on the day of trial was "far short of meeting, in any proper sense, a requirement for the appointment of counsel." 287 U.S. at 56, 53 S.Ct. at 59. Later the Court said in Avery v. State of Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940), "The denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel." 308 U.S. at 446, 60 S.Ct. at 322. See Reece v. State of Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955); compare Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

█ In the present case, counsel was appointed on the day the defendant was tried. Especially striking is the petitioner's assertion[6] that the court-appointed lawyer, after the most superficial contact with the case and without making inquiry into the circumstances, counselled surrender because the defendant had given a confession—a confession allegedly made under stress and coercion. No legal representation is worthy of the name if the lawyer makes no investigation of the background of the client's plea entered before the lawyer's appointment, or of the extrajudicial confession which induced the plea. If the exigencies of the trial, already begun, prevented such an investigation, then the appointment of counsel at that stage was an empty gesture and not a true satisfaction of the defendant's constitutional rights. This conclusion is of course reached only in view of all of the alleged circumstances of this case—the seriousness of the offense charged, the coerced confession, the difficult legal questions involved, the failure to appoint counsel until the day of the trial, the alleged lack of investigation or at least lack of serious investigation by the court-appointed counsel and the advice to plead guilty given after such superficial investigation. It does not necessarily follow that the same result would be reached in a case in which only one, or even several, but less than all, of these factors are found to exist.

█ In addition, although the point was not argued, we note that the District Court, in passing on the allegation that a confession, extracted by coercion, induced the petitioner to plead guilty, appears to have assumed that this cannot be raised on habeas corpus. In this the court erred. The claim may properly be raised on habeas corpus, and if it is proved at the hearing that an illegally obtained confession induced the plea of guilty, the conviction should be set aside unless there has been a voluntary waiver. The Supreme Court has decided that "a conviction following trial or on a plea of guilty based on a confession extorted by violence or by mental coercion is invalid under the Federal Due Process Clause." Com. of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 118, 76 S.Ct. 223, 224, 100 L. Ed. 126 (1956). Compare Cicenia v. Lagay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958).

█ Lastly, the appellee makes the contention that at all events the District Court was empowered to decide the factual conflict raised by the answer without conducting a hearing. This argument also is without merit. Directly in point

6. We repeat, as indicated earlier in this opinion, that these allegations of the petitioner concerning his legal representation may be utterly baseless. However, in determining the right to a hearing, (and only for this purpose) we are obliged to treat these as true.

is the language of the Supreme Court in Com. of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 118–119, 76 S.Ct. 223, 224, 100 L.Ed 126 (1956): "* * where a denial of these constitutional protections is alleged in an appropriate proceeding by factual allegations not patently frivolous or false on a consideration of the whole record, the proceeding should not be summarily dismissed merely because a state prosecuting officer files an answer denying some or all of the allegations."

On the issues raised the petitioner is entitled to his day in court.

Reversed and remanded for a hearing.