John H. GARBUTT

v.

WARDEN, MARYLAND PENI-
TENTIARY.

Civ. No. 14967.

United States District Court
D. Maryland.

Aug. 8, 1966.

Larry M. Wolf (court-appointed), Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, and Carville M. Downes, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

This is a petition for a writ of habeas corpus by a state prisoner who is serving a life sentence imposed on September 6, 1965, after he had entered a plea of guilty to murder in the first degree. No appeal was taken from the conviction, but thereafter Garbutt applied for relief under the Post Conviction Procedure Act, Annotated Code of Maryland, Article 27, section 645A–645J. The petition was denied after a hearing at which Garbutt was represented by court-appointed counsel, and application for leave to appeal was likewise denied. Garbutt v. Warden, 234 Md. 643, 200 A.2d 44 (1964).

Garbutt's first petition in this court for a writ of habeas corpus was denied without prejudice for failure to exhaust state remedies. After the denial of relief in the state courts, Garbutt filed a second petition for writ of habeas corpus herein. Counsel was appointed to represent him, and at a pretrial conference it was agreed that three issues should be heard: (1) whether a confession which Garbutt gave to the police was obtained in violation

of his constitutional rights; (2) whether, under all the circumstances, his plea of guilty waived that point and prevents his raising it in this proceeding; and (3) whether his representation by counsel at the time his plea was entered was insufficient, particularly, whether consideration was given to the possibility of excluding the confession.

A hearing was held in this court, at which testimony was given by Garbutt, by four police officers and by the attorney who represented him at his original trial. Garbutt's testimony was incredible; much of it was apparently based on his reading of recent decisions. Substantial parts of his testimony were contradicted by the police officers and by the lawyer who represented him at his original trial, and were weakened by Garbutt's own admissions on cross-examination.

The court finds the following facts. On or about May 18, 1961, Earl Lee Baker was robbed and murdered in his store in Carroll County, Maryland. Garbutt lived in Montgomery County, not far away. Although the police had a general description of one of the robbers which fit Garbutt, they did not suspect him. About three weeks later, on June 11, Garbutt, who had considered entering the police force himself, telephoned the Montgomery County Police Station at Rockville, asked for a friend, Officer Paden, and said that he had information he wished to give the police. Sergeant Davis drove at once to the Midway Diner, from which Garbutt had called. Garbutt said that he wanted to get something off his mind and that he had killed Baker. His wife told Sergeant Davis not to believe him, but Davis drove Garbutt to the Rockville Police Station, where Garbutt again spontaneously told the same story, saying it was bothering him. This story was transcribed, in narrative form, but not signed. Garbutt had been drinking that day, but he was not drunk and knew what he was doing and saying. The Montgomery County police did not interrogate him, except for a few questions to determine whether he was actually involved or was confessing to a crime he did not commit. The next morning, June 12, the Montgomery County officers turned Garbutt over to the State Police, who drove him to Westminster, where they took a formal, signed confession, in which Garbutt told of his involvement in the crime. Garbutt did not at any time ask to call a lawyer or anyone else. His wife knew that he had gone to the Police Station with the officers and she visited him at Westminster on June 13. The Montgomery County officers did not tell Garbutt of his right to remain silent or of his right to have a lawyer before they listened to his story; nor did the State Police officers give him any such advice before they took his statement; but Garbutt told his story to the Montgomery County officers of his own accord and without interrogation, and gave his written statement to the State Police willingly and without coercion, physical or mental. Some ten days later Garbutt wrote his wife, saying that he "had to get the matter off his chest" and that he felt better for having turned himself in.

Meanwhile, Garbutt had told the police that the other robber was a Negro sergeant named Jefferson and told them where Jefferson lived. The police went to Jefferson's house, recovered the gun used in the robbery and succeeded in arresting Jefferson a day or two later.

A special session of the Carroll County grand jury was called. Garbutt was indicted on June 21, and was called for arraignment on June 29. Charles O. Fisher, Esq., an able and experienced attorney in Carroll County, was appointed to represent him, and a plea of not guilty was entered. Fisher discussed the matter at length with Garbutt, visited him in jail on at least three occasions and checked the important facts. Garbutt told Fisher about the confession and did not suggest in any way that the confession had been coerced, or that he had asked for assistance of counsel, or that he was drunk when he gave the confession, or anything else which Fisher felt would show the confession was not admissible.

Nor did Garbutt ever indicate to Fisher that what he had said in his statement was not true. On the contrary, he said it was true and Fisher "checked it out".

Fisher attempted to make an arrangement with the State's Attorney and Judge Boylan that if Garbutt testified at Jefferson's trial a plea of guilty to second degree murder would be accepted. The Judge refused, but Fisher was able to arrange that if Garbutt entered a plea of guilty to first degree murder and testified at Jefferson's trial, Garbutt would not be given a death sentence. In view of the nature of the crime, both Garbutt and Fisher were seriously worried about the possibility of a death sentence. Garbutt was rearraigned, entered a plea of guilty to first degree murder, and testified to the facts of the crime at Jefferson's trial.

■ Ordinarily, a voluntary guilty plea forecloses federal habeas corpus inquiry into alleged irregularities in the proceeding, but a guilty plea is not a bar to a subsequent collateral attack if it is found in the collateral proceedings that the plea was the product of a tainted confession and, therefore, involuntary. White v. Pepersack, 4 Cir., 352 F.2d 470 (1965); Jones v. Cunningham, 4 Cir., 297 F.2d 851 (1962); Hipp v. Warden, 4 Cir., No. 9671 (1965). The Court must, therefore, consider whether Garbutt's plea was voluntary or was infected by an improper confession. The preliminary question, therefore, is whether the confession was improperly obtained under the applicable rules of law.

■ Admittedly, the written confession taken by the State Police at Westminster on June 13, 1961, does not meet the test established by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because Garbutt was not advised of his right to counsel, of his right to remain silent or that what he said might be used against him. But the Supreme Court held in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), that the decisions in Miranda v. State of Ari-

zona, supra, and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), should not be applied to cases in which the trial began before the respective dates of those decisions. Garbutt was convicted and sentenced in 1961. The validity of his confession must, therefore, be determined by the law as it stood before Escobedo and Miranda. The failure of the police to advise Garbutt of his rights before they took the written confession are factors to be considered. Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); Johnson v. State of New Jersey, supra. But, as noted in Johnson, the Supreme Court had expressly declined to condemn the entire process of in-custody interrogation solely because of the absence of such advice, see Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958); Cicenia v. La Gay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958). As the Supreme Court noted in Johnson, law enforcement agencies fairly relied on those prior decisions, now no longer binding.

■ In the case at bar, the court finds that there was no intimidation, ploy, deception, force or other form of coercion, physical or mental, in the questioning of Garbutt by the State Police at Westminster or in the earlier confessions which Garbutt spontaneously gave to the Montgomery County Police. Indeed, the earlier confessions come within the limitation expressed in Miranda that "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today". 384 U.S. at 478, 86 S.Ct. at 1630. The court finds and concludes that the oral statements and the written confession were voluntarily given.

■ The court further finds and concludes that the guilty plea was voluntarily entered.

Garbutt's charge of ineffective assistance by counsel is not supported by the evidence. He received able and devoted service from a competent and experienced attorney, who worked out an arrangement by which a possible, and even likely, death sentence was avoided. There was no basis in the law as it then stood for counsel to believe that an attack on the confession would be successful.

Garbutt is, therefore, entitled to no relief in this proceeding, and an order will be entered remanding him to the custody of the respondent.