Cecal **BELL**, Appellant,

v.

**STATE OF ALABAMA**, Appellee.

No. 23104.

United States Court of Appeals
Fifth Circuit.

Sept. 29, 1966.

Petition for Rehearing and Application for Stay Denied Nov. 1, 1966.

Before TUTTLE, Chief Judge, BELL, Circuit Judge, and KILKENNY,* District Judge.

TUTTLE, Chief Judge.

The appellant Cecal Bell, acting as his own counsel, filed a petition for writ of habeas corpus in the United States District Court for Southern Alabama, seeking release from an Alabama state prison where he is confined under a sentence for grand larceny. The district court denied the petition without calling for a return and without a hearing. No reasons for the denial were assigned. Subsequently, the district court also denied a motion for leave to appeal *in forma pauperis*. This Court then granted issuance of a certificate of probable cause allowing prosecution of the appeal *in forma pauperis,* to review the propriety of the district court's summary dismissal of appellant's petition. We conclude that, although the dismissal was not improper when made, we must now reverse and remand this cause for further proceedings.

An exhaustive statement of the allegations appearing in the petition is not necessary to the disposition of this appeal. An understanding of the nature of the federal questions presented can be gleaned from the following summary of the facts alleged. Appellant was arrested on suspicion of a series of cattle thefts on October 22nd, 1961. Two days later, the investigating officers approached Bell and demanded that he admit guilt to the charges. Being unaware of his legal rights, he became frightened, admitted guilt, and was immediately taken to the office of the Clerk of the Court, where he was ordered to sign a confession.

Three weeks later, on November 13th, 1961, appellant was contacted by an at-

* Of Portland Oregon, sitting by designation.

torney who told Bell that he had been employed to represent him; that he could not defend him because of his previous plea of guilty; but that negotiations had been arranged with the solicitor and the trial judge to sentence him to 25 years imprisonment with an early parole date. On November 16th, 1961, three days later, appellant was convicted and sentenced to five consecutive terms of five years each, a total of twenty-five years imprisonment, for grand larceny of cattle.[1] His account of the proceeding is that he was "brought to the Marengo County courtroom, seated with his attorney * * * each member of the jury was introduced and petitioner was immediately sentenced to twenty-five years imprisonment."[2] He avers that "his counsel was so lacking in diligence and competence that he was actually without representation," and that the transcript of his trial would verify his allegations.

█ These allegations of the appellant concerning his legal representation and the voluntariness of his confession may be baseless. However, in determining whether his petition may properly be dismissed without calling for a return and without a hearing, we are obliged to treat them as true. House v. Mayo, 324 U.S. 42, 45, 65 S.Ct. 517, 89 L.Ed. 739 (1945). On that assumption, we must determine whether the facts alleged amount to a taking of liberty without due process of law. In doing so, we must be mindful of the fact that appellant was without benefit of counsel in preparing his petition. The Supreme Court has said of such cases:

> Prisoners are often unlearned in the law and unfamiliar with the complicated rules of pleading. Since they act

so often as their own counsel in habeas corpus proceedings, we cannot impose on them the same high standards of the legal art which we might place on the members of the legal profession. Price v. Johnston, 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948).

██ We turn first to the voluntariness of appellant's confession. As we have noted, it is not entirely clear whether appellant's conviction was based on a plea or a verdict of guilty. More likely, it was a plea, and we will so assume for the purpose of this discussion. Even so, the voluntariness of the confession is the critical issue, for the averments of the petition clearly indicate a causal relationship between the allegedly coerced confession and the subsequent plea of guilty. Of such cases, the Supreme Court has said, "Our prior decisions have established that: (1) a conviction following trial *or on a plea of guilty* based on a confession extorted by violence or by mental coercion is invalid under the Federal Due Process Clause * * *." Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 118, 76 S.Ct. 223, 224, 100 L.Ed. 126 (1956). (Emphasis added.) Citing *Herman*, the Court of Appeals for the Fourth Circuit has said:

> The claim [that a coerced confession induced a guilty plea] may properly be raised on habeas corpus, and if it is proved at the hearing that an illegally obtained confession induced the plea of guilty, the conviction should be set aside unless there has been a voluntary waiver. Jones v. Cunningham, 297 F. 2d 851, 855 (4th Cir. 1962).

Thus the question is whether appellant has alleged any violation of federal con-

---

1. It may be appropriate to state that although this court has no power to review either federal or state court sentences, imposed within legal limits, the *apparent* severity of a 25 year sentence for five cases of cattle stealing is a circumstance that lends credibility to his contention that the plea of guilty was made after a promise of early parole.

2. Although the petition is not clear on the point, information submitted at this

Court's request by state authorities indicates that Bell pleaded guilty to the charges against him and was convicted on the basis of his guilty plea rather than after trial. His description of the proceeding at which he was convicted certainly tends to confirm this account. However, there is nothing in the record before us which reveals when appellant's plea was made, or sheds any light on the circumstances surrounding its making.

stitutional safeguards in the obtaining of his confession. Reliance on the principles established in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is precluded by the Supreme Court's holding in Johnson v. State of New Jersey, 384 U.S. 719, 86 S. Ct. 1772, 16 L.Ed.2d 882 (1966), that these decisions will not be retroactively applied to cases such as this one in which the trial began before the respective dates of those decisions. But this in no way affects the duty of the district court to consider a claim that a confession was obtained under circumstances which render it involuntary. In Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966), decided one week after *Miranda,* the Court said:

> The review of voluntariness in cases in which the trial was held prior to our decisions in *Escobedo* and *Miranda* is not limited in any manner by these decisions. On the contrary, the fact that a defendant was not advised of his right to remain silent or of his right respecting counsel at the outset of interrogation, as is now required by *Miranda* is a significant factor in considering the voluntariness of statements later made. Id. at 740, 86 S.Ct. at 1764.

And since the decision in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 2d 653 (1964), the test to be applied in both state and federal prosecutions is "[W]hether the confession was 'free and voluntary; that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. * * ' " Id. at 7, 84 S.Ct. at 1493. The petition states that the investigating officers *demanded* a confession, that appellant became frightened and admitted guilt, and that he was then *ordered* to sign a confession. Surely there are circumstances under which demands and orders that a confession be given may amount to "the exertion of any improper influence."

Considering next the allegations that appellant did not receive the effective assistance of counsel, the applicable test is stated in Williams v. Beto, 354 F.2d 698 (5th Cir. 1965):

> It is the general rule that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or *the purported representation was only perfunctory,* in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation. Id. at 704. (Emphasis added.)

It is clear that this test applies to cases in which counsel is retained by or for an accused as well as to cases in which counsel is appointed to represent an indigent defendant. Scott v. United States, 334 F.2d 72 (6th Cir. 1964). Contentions strikingly similar to those made here were presented in Jones v. Cunningham, 297 F.2d 851 (4th Cir. 1962). A state prisoner alleged in his habeas corpus petition that his assigned counsel had entered the case only after he had entered a plea of guilty; that the plea had followed a coerced confession; and that counsel had advised prisoner there was nothing he could do for him since he had already made a confession. In reversing the district court's dismissal of the petition, the court said:

> "Especially striking is the petitioner's assertion that the court-appointed lawyer, after the most superficial contact with the case and without making inquiry into the circumstances, counselled surrender because the defendant had given a confession—a confession allegedly made under stress and coercion. No legal representation is worthy of the name if the lawyer makes no investigation of the background of the client's plea * * * or of the extrajudicial confession which induced the plea." Id. at 855. (Footnote omitted.)

We agree with this statement, and in our view the principle it embodies entitled

Bell to have his claim concerning his representation considered. In the case at bar, the allegations made in the petition are highly conclusory in nature and leave much to be desired in the way of factual allegations to support the contentions made. However, bearing in mind the Supreme Court's admonition that such petitions prepared without the aid of counsel must be liberally construed, we conclude that appellant's petition is not so devoid of factual allegations in support of the substantial constitutional issues which it seeks to raise as to warrant the district court's summary dismissal of it.

██ There remains for consideration the question whether appellant has exhausted his state remedies within the meaning of 28 U.S.C. § 2254. At the outset, two principles should be reiterated. First, the exhaustion principle is one of comity, not jurisdiction, which is conferred by the allegation of an unconstitutional restraint. Whippler v. Balkcom, 342 F.2d 388, 390 (5th Cir. 1965). Second, under the Supreme Court's decision in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, the only remedies

which must be exhausted are those effective state remedies which are presently available, unless the habeas applicant has deliberately bypassed his state remedies. Cobb v. Balkcom, 339 F.2d 95, 99–100 (5th Cir. 1964). There is no contention that appellant has done so in this case.

A chronological account of Bell's various attempts to utilize his state remedies is given in the margin.[3] According to responses from state officials to our inquiries, the issues of involuntary confession and inadequate attorney were presented (along with other issues) to a state trial court in appellant's first *coram nobis* proceeding, and denied after an evidentiary hearing on the merits of the claims. No phase of the legal proceedings concerning appellant's conviction or his several attempts to secure post-conviction relief has been presented to the appellate courts of Alabama.

██ Under Alabama law, an appeal from a criminal conviction must be taken within six months. Code of Ala., Title 15, Section 368. Since appellant's conviction occurred in 1961, that remedy was obviously not available to him at the time he filed his petition in the District

---

3. The record from the District Court offers little information pertinent to this question. However, at the request of this court, information has been supplied by state officials which relates the following sequence of events. No appeal was taken from the original conviction. On January 7, 1964, a petition for writ of error *coram nobis* was filed in the Circuit Court of Marengo County, Alabama. After a hearing at which appellant was represented by an attorney retained for him by his family, the petition was denied on January 28, 1965. On April 17, 1965, appellant filed with the same court a motion to modify or reduce the sentence imposed. On June 14th, 1965, appellant filed a request for copies of the court's records, "for the purpose of compelling an accurate and acceptable writ of error *coram nobis* and/or habeas corpus within a court of jurisdiction." A pauper's oath was filed with this request. On July 9, 1965, the motion for reduction or modification was denied on the ground that the court was without jurisdiction to change or modify this sentence because more than thirty days had elapsed since the original

sentence was imposed, and on the ground that the motion was without merit. On the same day, the court denied appellant's request for records on the ground that it did not believe that he was an indigent person, and on the ground that all records in his case were furnished to him in open court on his petition for writ of error *coram nobis*. On July 21, 1965, this petition for a writ of habeas corpus was filed in the United States District Court for the Southern District of Alabama. The District Court dismissed the petition on July 26, 1965, and denied a motion for leave to appeal *in forma pauperis* on August 31, 1965. On September 13, 1965, a second petition for writ of error *coram nobis* was filed by appellant in the Circuit Court of Marengo County, Alabama. On November 2, 1965, this court granted the issuance of a certificate of probable cause for allowance of this appeal *in forma pauperis*. On February 9, 1966, appellant's second petition for writ of error *coram nobis* was denied, apparently on the ground that all of the allegations contained therein had been fully inquired into in the first such petition.

Court. A denial of a petition for *coram nobis* relief may be appealed in Alabama. Ex parte Keene, 275 Ala. 197, 153 So.2d 631 (1963). Here again, the appeal must be taken within six months, and "the matters adjudicated on hearing of a *coram nobis* application are *quasi res judicata,* i e., repeated applications or petitions merely resting on the same allegations should not be entertained." Allen v. State, 42 Ala.App. 9, 150 So.2d 399, 401 (1963).

 We are convinced that appellant is now, and has been since the lapse of six months from the denial of his first petition for *coram nobis* relief on January 28, 1965, entirely without any effective remedy in the courts of Alabama. The right of appeal is considered a creature of statute in Alabama, and the statutes granting it are strictly construed. The insistence of the appellate courts of that state upon meticulous observance of procedural niceties (including time limits) in the taking of appeals is well demonstrated in Albert v. State, 274 Ala. 579, 150 So.2d 198 (1962), and Relf v. State, 267 Ala. 3, 99 So.2d 216 (Ala.1957).[4] The only remedy to which strict time limits are inapplicable is the writ of error, and that remedy cannot be used by appellant here to review his original conviction, because the matters complained of lie in proof outside the record. Ex parte Allison, 42 Ala.App. 507, 169 So.2d 436 (1964). Nor can it be used to review the denial of his *coram nobis* petitions, since it is available only in criminal cases, while *coram nobis* is considered essentially civil in nature. Ex parte Wilson, 275 Ala. 439, 155 So.2d 611 (1963). Thus, it is apparent that once

the six month time limit for appealing the denial of Bell's first *coram nobis* petition expired, there was no way to obtain appellate review of the contentions presented therein in the courts of Alabama. Since the findings of such proceedings are *"quasi res judicata"* in Alabama, an appellate court would not reach the merits in an appeal from the denial of a subsequent *coram nobis* petition based on the same grounds alleged in the first. The Court of Appeals of Alabama has indicated that the failure to appeal the first such denial constitutes grounds for refusal of appellate review in subsequent proceedings. Ex parte Allison, supra, 169 So.2d at 437.

 The chief difficulty in this case is posed by the fact that the six month period for appeal of the denial of Bell's first *coram nobis* proceeding on January 28, 1965, lacked seven days of expiring on July 21, 1965, when he filed his petition for habeas corpus in the United States District Court. Thus the district court's dismissal of the petition on July 26, 1965, was supportable on the ground that appellant had failed to exhaust available state remedies. However, that court's order did not state the grounds for dismissal, and appellant did not perfect an appeal to the Supreme Court of Alabama within the remaining two days of the six month period. Thus we are confronted with the question of what disposition to make of this appeal at this date, when the remedy available at the time appellant's petition was filed no longer exists. This question was not reached in our decision in Key v. Holman, 346 F.2d 153 (5th Cir. 1965), upon which the State relies so heavily in its brief.

4. A trend away from such strict construction may be indicated by a recent case decided by the Supreme Court of Alabama. As we noted in Key v. Holman, 346 F.2d 153 (5th Cir. 1965), Alabama law provides for a free transcript for a prisoner appealing from a denial of post-conviction relief. The operative statute, Code of Ala., Title 15, Section 380(16) states in pertinent part that the petitioner "may within ten days after a judgment or order disposing of the proceedings adversely to

him] file * * * a similar petition * * * stating the desire of the petitioner to appeal * * *." In Keeton v. State, 278 Ala. 81, 175 So.2d 774 (1965), the court held that this ten day period would begin to run only after an appeal had been taken, and that an indigent could perfect his appeal at any time within the normal six months period, even though a strict reading of the statute would dictate otherwise.

The principles adverted to at the outset of this discussion are crucial to the solution of this question. If the exhaustion requirement were a jurisdictional prerequisite, we would have no choice but to affirm the district court's dismissal. But it is not. Rather, it is a rule of comity between courts relating to the appropriate exercise of power, and it is not to be applied mechanically. The Supreme Court in Fay v. Noia speaks of "remedies still open to the applicant *at the time he files his application for habeas corpus in the federal court.*" Fay v. Noia, 372 U.S. 391, 399, 83 S.Ct. 822, 827 (1963) (Emphasis added.) But the rationale of the exhaustion requirements is that state courts should have first opportunity to correct abuses of constitutionally protected rights, within their respective jurisdictions. And since our review of Alabama law clearly indicates that no effective remedy is now available to Bell in the courts of that state, the purpose of the exhaustion principle could not be furthered by affirmance. He is now entitled to have his claims considered by a federal court, and it would be pointless to require him to begin anew his action in the district court. We can see no rational purpose to be served by affirming the district court's summary denial of appellant's petition. Thus we conclude that this cause must be returned to the district court for further proceedings.

Notwithstanding the obvious burden placed on the trial courts of the filing of post-conviction motions, we consider it helpful to suggest that it would be useful for the trial court to include a brief statement of the reason for dismissing a petition for habeas corpus without the hearing contemplated in Title 28, U.S. C.A. § 2243.

Reversed and remanded for further proceedings not inconsistent with this opinion.

### ON PETITION FOR REHEARING

PER CURIAM:

The petition for rehearing and application for stay are hereby denied.

 By this Court's order, this case is returned to the District Court for the Southern District of Alabama for a hearing on the petition for habeas corpus. The affidavits that have been attached to this petition for rehearing are not now available for our consideration since they were not part of the record in the District Court, since that Court's dismissal of the application for habeas corpus disposed of the case without a hearing. It is for the trial court, not the Court of Appeals, to consider the factual issues raised by the original petition.