Manuel Jesus ALVAREZ,
Petitioner-Appellee,

v.

Louie L. WAINWRIGHT, Director,
Division of Corrections,
Respondent-Appellant.

No. 74–2796.

United States Court of Appeals,
Fifth Circuit.

Oct. 29, 1975.

Robert L. Shevin, Atty. Gen., Joel D. Rosenblatt, Asst. Atty. Gen., Miami, Fla., for respondent-appellant.

Edward R. Shohat, Donald I. Bierman, Miami, Fla., for petitioner-appellee.

Before BROWN, Chief Judge, and MURRAH * and WISDOM, Circuit Judges.

## JOHN R. BROWN, Chief Judge:

Alvarez was convicted in a Florida state court of breaking and entering and grand larceny. *Alvarez v. State,* 261 So.2d 200 (3d D.C.A.Fla.App.), *cert. denied,* 266 So.2d 348 (Fla.1972). After denial of state post conviction relief, 287 So.2d 121 (3d D.C.A.Fla.App.1973), Alvarez sought a writ of habeas corpus in the United States District Court claiming ineffective assistance of his retained counsel due to a conflict of interest. After an evidentiary hearing the District Court granted the petition and the state of Florida appeals. This takes us immediately to *Fitzgerald v. Estelle,* 5 Cir., 1974, 505 F.2d 1334 (en banc), *overruling,* 1973, 479 F.2d 420. We affirm.

Alvarez was charged and tried with co-defendants De La Cruz and Torres. Gino Negretti was retained by Alvarez and De La Cruz as their attorney. Shortly after the trial started the Assistant State Attorney spoke with Negretti and offered Alvarez a sentence of six months in the county stockade in exchange for a guilty plea and testimony for the state against De La Cruz and Torres. Negretti informed Alvarez of the plea offer but advised him against taking it on the grounds that Alvarez had a meritorious defense and that Alvarez' testimony would be detrimental to De La Cruz, Negretti's co-client. The plea offer was rejected, Alvarez did not testify, and he was found guilty and sentenced to 20 years and five years to run concurrently.

After appeal to the Florida appellate courts, Alvarez through new counsel brought a motion for postconviction relief under Florida Rule 3.850. Fla.R.Crim.P. 3.850. Alvarez and Negretti testified at the evidentiary hearing on the motion to vacate judgment on the grounds of ineffective assistance of counsel. At this hearing Negretti testified that he advised Alvarez not to take the plea offer because his testimony would be harmful to De La Cruz.[1] Alvarez also testified concerning Negretti's advice to him and about his own desire to take the stand at the trial.[2] In an-

---

* Honorable Alfred P. Murrah, Senior Circuit Judge of the Tenth Circuit, sitting by designation.

1. To Negretti:

> * * * * * *
>
> Q. Did a time come when Mr. Williams in behalf of the State offered you a negotiated plea of six months confinement for Mr. Alvarez, in return for his testimony and plea of guilty?
> A. That is correct, your Honor.
> Q. And what did you advise Mr. Alvarez with regard to this?
> A. I advised Mr. Alvarez that if he did *testify he would hurt his Co-Defendant* and I advised him against taking the offer, your Honor.
>
> * * * * * *
>
> App. 129.
>
> * * * * * *
>
> Q. Was the main reason, Mr. Negretti, that you advised him not to accept this plea negotiation that it would hurt Mr. De-La Cruz?
> A. That is correct. It is right in my affidavit, your Honor.
> Q. Is the same true as to his testimony at trial which he wished to offer?

> A. *That is correct, your Honor.* It would hurt his Co-Defendant, my Co-Defendant, my Co-Client, your Honor.
>
> * * * * * *
>
> App. 137 (state post-conviction hearing).

2. To Alvarez:

> * * * * * *
>
> Q. During the course of being tried in this case, did there come a time when he [Negretti] advised you that the State had offered a negotiated plea to you?
> A. Yes.
> Q. And at that time what discussion did you and Mr. Negretti have?
> A. Well, Mr. Negretti told me they offer six months but he say he got a good case and it's not for me to take it or talk about it because he is going to fight and think we going to—
> Q. Did he tell you at that time that if you testified it would hurt De-La Cruz?
> A. Yes. They told me, I mean, you know, when he didn't want me to talk or say anything because the statement I make in the beginning can hurt the others.
>
> * * * * * *

swer to a question from the Court, Alvarez stated that Negretti did not inform him of any conflict of interest and that he would not have hired Negretti if he understood the conflict.[3] The state judge denied the motion for Rule 3.850 relief.

Alvarez then filed his federal petition for habeas. At the habeas evidentiary hearing only Alvarez testified,[4] but the transcript from the state hearing and affidavits by Alvarez and Negretti in support of the state motion were made part of the record.[5] Again Alvarez stated that Negretti advised him against testi-

fying at the trial because he would hurt the other defendants, but that Negretti did not discuss the conflict.[6] At the hearing the state questioned Alvarez about a post-arrest statement he made to the police. The state attempted to establish that this statement was possibly damaging to Alvarez and was the basis of Negretti's advice to reject the offer.[7] Alvarez' testimony, however, indicates that the statement was exculpatory as to him because it gave another explanation for his presence in the area of the break-in, but that it could be used by the state to place De La Cruz in the neighborhood of the crime.[8] Alvarez

Q. Did you attempt to testify at the trial? Did you tell Mr. Negretti you wanted to testify?
A. Yes, I did.
Q. What did he tell you?
A. Not to do it.
Q. Did he tell you why?
A. It was the statement I make in the Hialeah police department in the beginning, they suppress that, and do that on my own behalf and it was suppressed, for some reason can hurt the other Defendant.
Q. For some reason your testimony could hurt the other Defendant?
A. Yeah.

App. 138–141.

**3.**

\* \* \* \* \* \*

THE COURT: Mr. Negretti told you there were conflicting interests as far as representing you and De-La Cruz?
THE DEFENDANT: No. he never told me that.
THE COURT: He never told you that?
THE DEFENDANT: No. if I know that. I don't hire him any way.
THE COURT: What?
THE DEFENDANT: If I know there is going to be any conflict, I don't hire Mr. Negretti in the beginning.

\* \* \* \* \* \*

App. 151–152 (state post-conviction hearing).

**4.** The record indicates that Negretti was out of the country at this time. App. 101 (federal hearing).

**5.** See App. 101–102.

**6.** To Alvarez:

\* \* \* \* \* \*

Q. What did Mr. Negretti tell you?
A. He had an offer from the State if I pleaded guilty and if I declare against the other defendants.

Q. What was the offer?
A. Six months in the city stockade.
Q. Did you ask for Mr. Negretti's advice?
A. Yes.
Q. What did Mr. Negretti tell you?
A. Mr. Negretti told me not to do it because I would be hurting the other defendants.

\* \* \* \* \* \*

Q. Now, when he told you about the plea offer, did he discuss with you any possible conflict with Mr. De La Cruz?
A. No. He did not tell me anything.
Q. Did you then go to trial, Mr. Alvarez?
A. Yes.
Q. Did you testify in your trial?
A. No.
Q. Did you want to testify in your trial?
A. Yes.
Q. Why did you not testify, sir?
A. Mr. Negretti a couple of times told me not to do it because, if I testified, I would have to testify against the other two defendants.

\* \* \* \* \* \*

App. 79–80 (federal hearing).

**7.** The statement was suppressed but would have been available for impeachment under *Harris v. New York,* 1971, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1.

**8.** To Alvarez:

\* \* \* \* \* \*

Q. Did he talk to you about your prior statement to the police being against you if you testified?
A. He did not tell me anything about that and that was suppressed without telling me anything. That's why I told him I wanted to testify.
Q. But after you told him you wanted to testify in the State Court, you said he said that it was a statement you made in the Hialeah Police Department in the beginning

stated that he also wanted to testify at the trial to explain a witness' identification of someone at the scene wearing a gold colored jacket.[9]

At the conclusion of Alvarez' testimony the District Court found that Alvarez was denied effective assistance of counsel as guaranteed by the Sixth Amendment and applied to the states by the Fourteenth Amendment. The Court found that there was state action because of the activities of the prosecutor in offering the negotiated plea to one defendant with full knowledge that Alvarez' attorney also represented another defendant and that his advice was based on the purpose of protecting the co-defendant. The District Court also found that the conflict of interest constituted a breach of legal duty.

This case was decided by the District Court before our recent decision enunciating the requirements for finding ineffective assistance of retained counsel, *Fitzgerald v. Estelle, supra.* In rejecting earlier cases implying that there was no difference in the standard applied to appointed and retained counsel,[10] we held in *Fitzgerald* that there are two instances in which the federal court has the power in a state case to inquire into the effectiveness of representation of retained counsel.

In the first instance state action can be established by finding that

---

as one of the reasons that he did not want you to testify?

\* \* \* \* \* \*

THE WITNESS: At this time I don't remember exactly, but I believe if I would have testified with that declaration I made, that statement, it would have benefited myself.
App. 87–88.

9. To Alvarez:

\* \* \* \* \* \*

Q. The day after you were arrested, when they were transporting you from the Hialeah Jail to the Dade County Jail, didn't you and the police officer stop at the scene of the house break-in and attempt to find your jacket?

\* \* \* \* \* \*

THE WITNESS [Alvarez]: The day I was transported from Hialeah to the city jail, it went direct, but I offered *myself voluntarily* to help the police department in Hialeah to try to help in everything I could and I could help resolve.

After I was arrested, they kept me there for three or four hours riding around all over Hialeah, and they also threatened me in a certain place, but I told them after I was threatened and I was put in the car again and was taken to find the other boy so I could identify him. When I was taken from the Hialeah Jail to the Dade County Jail, we went direct. I was never taken—
BY MR. ROSENBLATT [prosecuting attorney]:
Q. During the many times, then, you had conversations with the police officers regarding the existence and your participation in the crime?
A. I did not participate in the crime of the house. I was somewheres else. I was at another house. I was in the house of Dr.

Raquel De La Cruz. The robbery was about an hour before.

\* \* \* \* \* \*

Q. Do you recall whether there were any witnesses who were able to identify you as the man in the car with Mr. De La Cruz and Mr. Torres?
A. There was a lady that said that I was in the house where the robbery was not committed, knocking on the door, with a gold-colored jacket, and Mr. De La Cruz had another gold-colored jacket and I could not explain that at the trial.
Q. Did the woman identify you at the trial as being the one that she saw?
A. The woman lived right next door to Mr. De La Cruz, not where the robbery was committed.
Q. That is not in answer to my question, My question was, was she able to identify you at trial?
A. Yes, sir. She identified me during the trial, but I was in front of Dr. De La Cruz' door, where I went to see Dr. De La Cruz for a private case.
Q. Is Dr. De La Cruz the same Roberto De La Cruz?
A. No. Dr. Raquel De La Cruz is a gynecologist and the other gentleman, Roberto De La Cruz, was involved in the case.
Q. So it is your testimony that you did not participate in the break-in of the house?
A. I did not go to the house where they say the robbery occurred.
App. 88–93 (federal hearing).

10. *See Porter v. United States,* 298 F.2d 461 (5 Cir. 1962); *Bell v. Alabama,* 367 F.2d 243, 247 (5 Cir. 1966), and *Holland v. Henderson,* 460 F.2d 978 (5 Cir. 1972); *see also Breedlove v. Beto,* 404 F.2d 1019, *n.* 1 (5 Cir. 1968).

the trial was so fundamentally unfair as to deprive the defendant of due process under the Fourteenth Amendment. Under the second approach, even if the conduct of the trial is not so unfair as to rise to the level of a Due Process violation, requisite state action can be shown where there is significant involvement of the state through knowledge or awareness of the ineffectiveness of the retained counsel by functionaries of the state judicial system such as the trial judge or the prosecutor.[11] Under this second prong, once the state action is found, counsel is judged by traditional Sixth Amendment standards.[12]

■ Although we can assume without deciding that the decision in this case could be based on a denial of *Fitzgerald* due process, because we find the Sixth Amendment facts so strong here we do not need to rest our holding on the due process ground. Finding that there was state action through the knowledge and involvement of the prosecutor we are compelled to find that the assistance provided to Alvarez by Negretti was ineffective by Sixth Amendment standards because of the basic conflict of interest in which Negretti played the rights of one defendant against those of the other and decided himself whose advantage was to be served.

■ Requisite state action is present here because the Assistant State Attorney was actively involved in the facts creating the conflict of interest. He had knowledge, as did the trial judge from what was going on before him, of Negretti's joint representation. The very nature of the plea offer was that Alvarez turn on his co-defendant. The purpose of the prosecutor's trade was to damage De La Cruz' position. The prosecutor knew that any advice counsel gave to Alvarez as to the plea bargain inescapably involved De La Cruz. Indeed a predominant factor in Negretti's advice was his emphasis to Alvarez that the testimony exacted of him by the trade would harm De La Cruz.

■ Once the requisite state action is found, the conduct of retained counsel is judged by the standards of the Sixth Amendment.[13] Since *Glasser v. United States,* 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 it has been the rule that an attorney must offer untrammeled and unimpaired assistance free of any detrimental conflict of interest. *Glasser, supra,* at 70, 62 S.Ct. 457; *Fitzgerald, supra,* at 1336 n. 2; *Holland v. Henderson,* 5 Cir., 1972, 460 F.2d 978, 981; *Porter v. United States,* 5 Cir., 1962, 298 F.2d 461, 464.[14]

The state argues that Negretti was motivated in his advice to Alvarez not to testify by his fear that the suppressed post-arrest statement, if used for

---

11. *Fitzgerald* says that state action will be found if

some responsible state official connected with the criminal proceeding who could have remedied the conduct failed in his duty to accord justice to the accused. That the trial judge and the prosecutor have such a capacity and duty is unquestionable. Therefore, if the trial judge or the prosecutor can be shown to have actually known that a particular defendant is receiving incompetent representation and takes no remedial action, the state action requirement is satisfied. If they directly participate in the incompetency, it is even more so. Furthermore, if the incompetency of a retained attorney's representation is so apparent that a reasonably attentive official of the state should have been aware of and could have corrected it then again the state action requirement is satisfied.
*Fitzgerald, supra,* at 1337.

12. *Fitzgerald v. Estelle, supra,* at 1338; *see Herring v. Estelle,* 5 Cir., 1974, 491 F.2d 125.

13. For an extensive discussion of the application of Sixth Amendment standards to conflict of interest and appointed counsel, see Judge Ainsworth's very recent opinion in *Foxworth v. Wainwright,* 5 Cir., 1975, 516 F.2d 1072. See also *Castillo v. Estelle,* 5 Cir., 1974, 504 F.2d 1243, 1245; *Baker v. Wainwright,* 5 Cir., 1970, 422 F.2d 145, 149.

14. Although the statements from *Porter* quoted in the opinion of the District Court indicating that the same standards apply whether counsel is appointed or retained fell before *Fitzgerald,* the basic holding in *Porter* concerning conflict of interest still stands. *See Fitzgerald, supra,* at 1336 n. 2.

impeachment, would be harmful to Alvarez. There is no contradiction in the record before us, however, as to Negretti's *primary* motive—protection of De La Cruz.[15]

As counsel frankly acknowledged both in his affidavit and at the Rule 3.850 hearing, Alvarez had a good defense and during the trial asked to be put on the witness stand. Without his testimony Alvarez' only defense was the weakness of the state's case. By urging rejection of the bargain and advising him against testifying Negretti was protecting the co-defendant at the risk of great harm to Alvarez. Although the record does not show the prosecution then privy to these communications the effect was ultimately revealed before the Court by the simple fact that Alvarez did not take the stand.

█ At the habeas hearing the state entered the Rule 3.850 transcript as evidence that Alvarez acknowledged that Negretti informed him of the conflict. But in view of the testimony of Negretti[16] and his affidavit[17] the District Court was not bound by Alvarez' equivocal answers at the state hearing. Any statements by Alvarez or Negretti that there was disclosure of the conflict were not of such positiveness that they compelled the federal court to accept them.[18] *See Von Moltke v. Gillies*, 1948, 332 U.S. 708, 720, 68 S.Ct. 316, 92 L.Ed. 309; *Larry Buffalo Chief v. South Dakota*, 8 Cir., 1970, 425 F.2d 271, 280; *Baker v. Wainwright, supra*, at 149. Looking at the record as a whole and in view of Negretti's candid admission that his primary motive was to protect De La Cruz,[19] any conclusory statement that Alvarez was informed of the conflict did not compel the Federal Judge to find full disclosure.[20]

Affirmed.

**15.** See Negretti's affidavit in support of the post-conviction motion, note 17, *infra*.

**16.** See note 1, *supra*.

During questioning by the defense counsel Negretti said:

Q. Did you—at any time during the course of the trial, did Mr. Alvarez tell you he wanted to testify in his own defense?

A. Yes, your Honor.

Q. And what did you tell him?

A. I tell him that if he testify he was going to hurt his Co-Defendant, your Honor.

Q. And did you tell him that he could help himself by testifying?

A. No, sir.

Q. All right. Did you have an obligation to his Co-Defendant as well as to him?

A. Yes, your Honor.

Q. Did you at any time receive from Mr. Alvarez a waiver of your conflict?

A. No, sir.

App. 129–131 (state hearing).

**17.** Affidavit of Gino Negretti, Sept. 26, 1972:

5.— I never advised either MANUEL JESUS ALVAREZ or ROBERTO DE LA CRUZ, of any possibility that there might be a conflict of interest between them.

6.— I advised the Defendant MANUEL JESUS ALVAREZ that he should not testify in this case because if he did so it would be detrimental to the Defendant ROBERTO DE LA CRUZ who I also represented at a joint trial of both.

**18.** Alvarez' inability to understand even the little that he was told is indicated by his use of an interpreter at the habeas hearing and by the following dialogue at the state hearing between the prosecutor and Negretti:

Q. And did Mr. Alvarez indicate to you that he understood what you were saying when you gave him those advices, that he may have had a meritorious—

A. That I can't vouch for him. He is a layman.

App. 134.

**19.** See note 1, *supra*. This admission was strongly against Negretti's professional interest.

**20.** *See Horowitz v. Henderson*, 5 Cir., 1975, 514 F.2d 740, 743; *United States v. Shea*, 5 Cir., 1975, 508 F.2d 82, 85; *Holland v. Henderson, supra*, at 981.